The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Andreas RUBIO, Defendant–Appellant.

No. 06CA2014.

Colorado Court of Appeals, Div. II.

April 16, 2009.

Rehearing Denied May 7 and June 11, 2009.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Thomas K. Carberry, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CONNELLY.

Defendant, Andreas Rubio, was convicted after a jury trial of five counts of attempted first degree extreme indifference murder, and sentenced to consecutive thirty-six-year terms for a total of 180 years in the Department of Corrections. We hold the trial court

erroneously denied defendant's request to provide the jury with the option of convicting on a lesser non-included offense involving reckless discharge of a firearm. This error requires reversal of three of the five attempted murder convictions. It does not require reversal of the two convictions involving child victims actually struck by gunfire because the jury was instructed on analogous lesser assault offenses as to those two victims.

## I. Background

One Sunday night, defendant used an AK–47 assault rifle to shoot repeatedly at an empty car parked outside a Denver residence. He did so because a woman inside the residence had argued with defendant's female friends, and had sent a text message disrespecting defendant's gang. After the shooting defendant called a friend of the woman, asking what the woman thought of the gang now that the car and house had been "shot up."

Defendant's wild shots blew holes not only in the car but also in two nearby residences. In one apartment, a man was in the living room and a woman was in a bedroom. In the other, Ms. V and her infant son were asleep in one bedroom, while her twelve- and seven-year-old daughters were asleep in another.

One bullet struck, bloodied, and seriously injured both the V daughters. Their mother, awakened by their screams, entered their room to encounter a nightmare. Before passing out, the older daughter said she was dying and told her mother she loved her. Paramedics responded to the mother's 911 call, and the girls were taken to a hospital by ambulance. Both fortunately recovered.

The prosecution, alleging defendant acted with extreme indifference to the value of human life, charged six counts of attempted murder. The named victims were the four occupants of the V residence and the man and woman inside the other residence.

The prosecution initially also charged defendant with less serious offenses, including illegal discharge of a firearm, criminal mischief, and assault of the two V girls who had been struck by bullets. It later moved and was allowed to dismiss the firearm and mischief charges.

The jury found defendant guilty on five of the six attempted murder counts, involving the four members of the V family and the man in the other residence. It acquitted him of the count involving the woman who at the time of the shooting was in a back bedroom not struck by bullets. The jury also made special findings, relevant for sentencing purposes, that the attempted murders involved a deadly weapon and had caused serious bodily injuries to the two V girls. Finally, the jury found defendant guilty of assaulting the two V girls, but those assault charges merged into the attempted murder convictions at sentencing.

## II. Discussion

### A. The Sufficiency of Evidence of Attempted Murder

■ Defendant argues the evidence was legally insufficient to convict him of attempted extreme indifference murder. We review the evidence in the light most favorable to the prosecution to determine whether any rational juror could find defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *People v. Lehnert*, 163 P.3d 1111, 1115 (Colo.2007); *People v. Dunlap*, 124 P.3d 780, 819 (Colo.App.2004).

■ It is settled that attempted extreme indifference murder is "a cognizable crime under the Colorado Criminal Code." *People v. Castro*, 657 P.2d 932, 937 (Colo.1983). We recognize Colorado is the only state explicitly to recognize this attempt crime, and that the concept of attempting to commit a homicide through extreme indifference or recklessness is "largely disfavored by legal scholars and almost ... universally rejected in American law." *See* Michael T. Cahill, *Attempt, Reckless Homicide, and the Design of Criminal Law*, 78 U. Colo. L.Rev. 879, 879–84 (2007). Nonetheless, absent some constitutional impediment, we must apply Colorado laws as enacted by the legislature and definitively construed by the supreme court.

Extreme indifference murder requires proof a defendant "knowingly engage[d] in

conduct which create[d] a grave risk of death" to another person or persons "[u]nder circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally." § 18–3–102(1)(d), C.R.S.2008. A defendant "commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." § 18–2–101(1), C.R.S.2008.

██ Attempted extreme indifference murder thus covers knowing conduct that created a grave risk of, but did not result in, death. *Castro,* 657 P.2d at 937–38, *discussed in People v. Thomas,* 729 P.2d 972, 975 (Colo. 1986). We reject defendant's contention that the prosecution must prove he knew his actions were "practically certain" to cause death. The "knowingly" requirement in this type of offense relates to the conduct but *not* to its *result. See Castro,* 657 P.2d at 938. Defendant thus misplaces reliance on the general definition providing a person acts " 'knowingly' . . . with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result." § 18–1–501(6), C.R.S.2008.

██ The knowingly requirement is satisfied in an attempted extreme indifference murder case by proving a defendant "engage[d] in conduct that in fact create[d] a grave risk of death." *Thomas,* 729 P.2d at 975; *see also Palmer v. People,* 964 P.2d 524, 527–28 (Colo.1998) (to be convicted of attempting a crime requiring knowing conduct, "it is enough that the accused knowingly engages in the risk producing conduct that could lead to the result"). Defendant need not have known his conduct was practically certain to cause death.

We recognize a division of this court has stated "the extreme indifference murder statute requires an awareness on the part of the offender that his actions were practically certain to cause the death of another." *People v. Ellis,* 30 P.3d 774, 779 (Colo.App.2001) (citing *People v. Marcy,* 628 P.2d 69 (Colo. 1981)). But *Marcy* has been superseded by statute, *see Candelaria v. People,* 148 P.3d 178, 181–82 (Colo.2006); *People v. Jefferson,*

748 P.2d 1223, 1229–34 (Colo.1988), and does not support the proposition for which it was cited in *Ellis.* The *Ellis* language is also contrary to the supreme court's post-*Marcy* holdings in *Castro* and *Thomas.*

It was not irrational to find defendant guilty beyond a reasonable doubt of five counts of attempted extreme indifference murder. *See People v. Beatty,* 80 P.3d 847, 855 (Colo.App.2003) (defendant may be convicted of multiple counts of attempted extreme indifference murder if conduct gravely endangered several lives). Defendant knowingly engaged in depraved conduct that in fact created a grave risk of death. Even if he meant only to destroy a car, spraying such firepower around a neighborhood could be found to reflect an attitude of universal malice manifesting extreme indifference to human life generally.

### B. Lesser Non–Included Offenses

#### 1. Procedural Background

Defendant requested the court to instruct the jury on lesser offenses of illegally discharging a firearm and criminal mischief. The former occurs where one "knowingly or recklessly discharges a firearm into any dwelling or any other building or occupied structure, or into any motor vehicle occupied by any person." § 18–12–107.5(1), C.R.S. 2008. The latter occurs where one "knowingly damages" property; the classification of the crime depends on the value of the damaged property. § 18–4–501(1), C.R.S. 2008.

The court declined to instruct on the requested lesser offenses. It stated the People had "discretion to determine which crimes" to prosecute, and that it previously had struck the lesser crimes on which defendant sought instructions.

The court did instruct on assault offenses involving the two girls seriously injured by the gunfire. The People had charged two counts of first degree extreme indifference assault. § 18–3–202(1)(c), C.R.S.2008. The court also granted a defense request to instruct on two counts of second degree reckless assault. § 18–3–203(1)(d), C.R.S.2008.

The jury returned guilty verdicts on five of the six attempted murder counts and all four assault counts (the two counts charged by the prosecution and the two lesser ones added at defense request). The court merged all the assault counts into the attempted murder counts involving the two girls.

### 2. Case Law

The "lesser non-included offense" doctrine—as distinct from the doctrine whereby either side may seek instructions on lesser offenses included within a charged offense—is entirely the creation of Colorado cases. It is not imposed by Colorado statute or rule. *See Meads v. People,* 78 P.3d 290, 294 (Colo. 2003) ("this court has adopted the strict elements tests as the means of determining whether one crime is the lesser-included offense of another crime"); Crim. P. 31(c) (defendant may be found guilty of a lesser offense "necessarily included" in the offense charged). Nor is it required by the federal or state constitutions, and it is contrary to practice in federal courts and most other states. *See Hopkins v. Reeves,* 524 U.S. 88, 94–99, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998); *Schmuck v. United States,* 489 U.S. 705, 715–21, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); *Arko v. People,* 183 P.3d 555, 561 (Colo.2008) (Coats, J., with Eid, J., dissenting).

The lesser *non-*included offense doctrine originated in *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974). *Rivera* held the "statutory test" of whether a lesser offense is necessarily included did *not* "preclude" honoring a defendant's request for instructions on a non-included lesser offense. *Id.* at 28–29, 525 P.2d at 434. It analogized this to a theory of defense instruction that could "insure better trials and fairer verdicts." *Id.* The court held "a theory of the case instruction which permits the jury to find a defendant innocent of the principal charge and guilty of a lesser charge should be given when warranted by the evidence," and it reversed a conviction for failing to give such an instruction. *Id.*

The doctrine has spawned "confusion" because a lesser non-included offense instruction is analogous to but different from lesser included and theory of defense instructions.

*See People v. Skinner,* 825 P.2d 1045, 1047–48 (Colo.App.1991). Unlike both analogues, a lesser non-included offense instruction can result in a defendant being worse off by being convicted of more crimes than charged by the prosecution. *See id.* Nonetheless, the supreme court's post-*Rivera* decisions have "never retreated" from the doctrine. *Arko,* 183 P.3d at 561 (Coats, J., with Eid, J., dissenting).

### 3. Standard of Appellate Review

Colorado cases have not decided the standard of appellate review of denials of lesser non-included offense instructions. The issue is complicated by the hybrid nature of such instructions. The People ask us to apply the abuse of discretion standard governing whether evidence supports a lesser included instruction. *See People v. Jimenez,* 217 P.3d 841, 870 (Colo.App. 2008) (citing federal appellate cases). On the other hand, federal appellate courts review de novo the complete denial of theory of defense instructions. *United States v. Brandt,* 546 F.3d 912, 917 (7th Cir.2008); *United States v. Richardson,* 532 F.3d 1279, 1290 (11th Cir.2008); *United States v. Hurt,* 527 F.3d 1347, 1351 (D.C.Cir. 2008).

Here, the court relied on the legally erroneous premise that prosecutorial discretion precluded a lesser offense instruction. That ruling would not warrant deference even under abuse of discretion review. *See People v. Wadle,* 97 P.3d 932, 936 (Colo.2004) (a "district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law") (internal quotations omitted). Accordingly, we must review the record independently.

### 4. Application to this Case

■ A defendant is entitled to a lesser non-included offense instruction if there is "a rational basis in the evidence to support a verdict acquitting [him] of a greater offense and convicting [him] of the lesser offense." *People v. Trujillo,* 83 P.3d 642, 645 (Colo. 2004) (internal punctuation omitted); *accord People v. Garcia,* 940 P.2d 357, 361 (Colo. 1997). This, not coincidentally, is the same standard governing entitlement to lesser in-

cluded offense instructions. *See Skinner,* 825 P.2d at 1047.

Defendant argues a lesser non-included offense instruction should be no different than any other theory of defense instruction, required as long as "the record contains any evidence to support it." *People v. Fuller,* 781 P.2d 647, 651 (Colo.1989). But, while it has analogized to theory of defense instructions, our supreme court has been quite clear in imposing an additional burden on a defendant seeking a lesser non-included offense instruction: under *Trujillo* and *Garcia,* defendants must show an evidentiary basis upon which the jury rationally could acquit on the greater but convict on the lesser offense. *See also People v. Carey,* 198 P.3d 1223, 1233–34 (Colo.App.2008) (citing several cases applying this standard).

The principal lesser offense at issue here, and the only one we need consider, was illegal discharge of a firearm into a building or car, § 18–12–107.5. We conclude a jury rationally could have acquitted defendant of attempted murder but convicted him of this lesser firearms offense. The principal difference between the two crimes, as applied to this case, involves the degree of wantonness or recklessness: attempted extreme indifference murder requires proof of "universal malice manifesting extreme indifference to the value of human life generally," § 18–3–102(1)(d), while the firearms offense requires only that defendant "knowingly or recklessly discharge[d]" a gun into a dwelling, § 18–12–107.5.

The People argue the offense of recklessly discharging a firearm into a building "fails to accurately describe [the] actions" of a defendant who "indiscriminately" fires numerous AK–47 shots that enter two different homes. This argument relies on cases upholding denial of lesser non-included offense instructions where the only evidence distinguishing the greater from lesser offense was "undisputed." *E.g., People v. Hall,* 59 P.3d 298, 300 (Colo.App.2002); *People v. Cauley,* 32 P.3d 602, 609 (Colo.App.2001).

■ Here, unlike in *Hall* and *Cauley,* the distinguishing element—whether defendant acted with "universal malice" or lesser recklessness—was not undisputed but was the principal issue for the jury to decide. The purpose of a lesser non-included instruction is to "allow[ ] *the jury* to consider fully the elements of the crime charged and of the offense the defendant contends was involved—a procedure ... consistent with the right to trial by jury." *Rivera,* 186 Colo. at 29, 525 P.2d at 434 (emphasis added). In that respect, it is like any other defense theory, whose weight "is for the jury and not for the court to determine." *Fuller,* 781 P.2d at 651.

The People's only remaining argument on the firearms offense is that an instruction was unwarranted "under the defendant's own theory ... that he had merely meant to shoot a parked car, which was undisputedly unoccupied, and only recklessly shot into two occupied residences." *See generally People v. Bustos,* 725 P.2d 1174, 1175–76 (Colo.App. 1986) (no entitlement to lesser non-included offense instruction inconsistent with theory of defense). This argument fails because the firearms statute also covers one who "recklessly discharges a firearm into any dwelling," § 18–12–107.5—which was precisely what defendant argued had occurred.

### 5. Review for Prejudice

■ This does not end our analysis because we must consider whether failure to instruct on the firearms offense prejudiced defendant. Defendant asks us to apply the constitutional standard of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), requiring reversal unless the error was harmless beyond a reasonable doubt. But there is no constitutional right to a lesser *included* instruction in a non-capital case, *see United States v. Eddy,* 523 F.3d 1268, 1270 (10th Cir.2008) (citing *Dockins v. Hines,* 374 F.3d 935, 938 (10th Cir.2004)), much less to a lesser *non*-included offense instruction.

■ It is not clear under Colorado law whether a *complete* failure to instruct on a valid theory of defense could ever be harmless. *See People v. Nunez,* 841 P.2d 261, 266 (Colo.1992) ("The prosecution has cited no Colorado precedent holding that the failure to instruct a jury on a defendant's theory of defense constitutes harmless error."). What

is clear, however, is that failure to give a lesser non-included offense instruction may be harmless—and perhaps may not even be error—if "the defendant's theory could be argued under the other instructions given by the court." *Trujillo,* 83 P.3d at 645 (stating "error" in such cases "is not prejudicial," and "[n]o error occurs when the trial court refuses to give a defense theory instruction when the contents of other instructions suffice") (internal quotations and other punctuation omitted).

■ Whether viewed as harmless error or no error at all, a trial court's refusal to give a lesser non-included offense instruction will not justify reversal under *Trujillo* if the court instructed on comparable lesser non-included offenses. Here, the court did instruct on two lesser non-included assaults. We must determine whether there was any "meaningful difference between the lesser non-included offenses given and those rejected." *Id.* at 647.

The two lesser non-included offenses on which the court did instruct the jury were second degree reckless assaults of the two girls struck by gunfire. The jury was instructed that these offenses require that defendant acted "recklessly" and "by means of a deadly weapon" to cause serious bodily injury to the girls. *See* § 18–3–203(1)(d) (second degree reckless assault statute). Apart from the element of serious bodily injury, which defendant conceded had occurred here, this assault crime involved the same reckless use of a firearm that defendant asked the jury to be instructed on under section 18–12–107.5.

Accordingly, on the attempted murder counts involving the two girls struck by gunfire, the lesser non-included assault offense instructions served the same purpose that would have been served by lesser non-included firearms offense instructions. Defendant was able to (and did) argue that the jury should convict him of assaulting but not attempting to murder the two girls.

■ There was no comparable lesser offense on which the jury could have convicted with respect to the remaining three attempted murder counts. The jury on those counts was left with an all-or-nothing choice of convicting or acquitting defendant of attempted murder. And its verdicts demonstrate that the jury viewed the attempted murder counts involving victims not actually struck by gunfire somewhat differently: the jury acquitted defendant of one of those counts, involving the victim most physically removed from the fired shot. We cannot know if the jury might have chosen to acquit defendant of the remaining counts had it been provided a lesser non-included firearms count as well. Under Colorado's lesser non-included offense doctrine, defendant was entitled to have the jury consider that option as well as the attempted murder charges.

The failure to instruct on the firearms offense does not require reversal of the attempted murder convictions involving the two girls struck by gunfire. It does, however, require reversal of the remaining three attempted murder convictions.

### C. The "Universal Malice" Instruction

■ Defendant argues the attempted murder convictions should be reversed because the jury "instructions left out the essential element of 'universal malice.'" Because this objection was not raised in the trial court, we apply the plain error standard of review. *See People v. Miller,* 113 P.3d 743, 749–50 (Colo.2005).

The court instructed that attempted murder required that defendant have engaged in conduct constituting a substantial step toward committing extreme indifference murder. It then instructed that one of the elements of extreme indifference murder was acting "under circumstances evidencing an attitude of universal malice manifesting extreme indifference to the value of human life generally," meaning "a cold-bloodedness or aggravated recklessness which by its very nature is not directed against the life of a particular person but evidences a willingness to take human life without care or concern for who the ultimate victim may be."

The attempt instruction did not expressly require, as it should have, that defendant have acted with universal malice. This omission was not plain error because the instructions as a whole made this sufficiently clear.

*Cf. Gann v. People,* 736 P.2d 37, 39 (Colo. 1987) (no plain error where "attempt instruction omitted the requirement that the defendant act after deliberation, [but] the culpability element of deliberation was prominently included in the definition of the crime of first-degree murder"), *applied in People v. Petschow,* 119 P.3d 495, 500–01 (Colo.App. 2004).

### D. The Reasonable Doubt Instruction

■ Defendant raises a constitutional challenge to the reasonable doubt instruction. Because trial counsel raised no such objection, the plain error standard applies. *Miller,* 113 P.3d at 749–50.

The court used the pattern instruction on reasonable doubt, CJI–Crim. 3:04 (1983). Prior cases approvingly cite this instruction but do not address defendant's specific arguments. *People v. Cevallos–Acosta,* 140 P.3d 116, 123–24 (Colo.App.2005); *People v. Lee,* 93 P.3d 544, 550 (Colo.App.2003). We now consider those arguments and uphold the instruction. *Accord People v. Robb,* 215 P.3d 1253 (Colo.App. 2009).

■ A criminal conviction requires proof beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). But as "long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Victor v. Nebraska,* 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) (citations omitted). An instruction is erroneous only if there is "a reasonable likelihood" the jury understood it to allow conviction on constitutionally insufficient proof. *Id.* at 6, 114 S.Ct. 1239.

Defendant argues the pattern instruction "reverses the burden of proof" (contravening the presumption of innocence) and sets too low a standard of proof. His two principal objections focus on language describing when reasonable doubt can "arise" and when jurors might "hesitate to act."

The instruction begins by describing the "presumption of innocence" that "remains with the defendant throughout the trial and should be given effect by you [jurors] unless, after considering all the evidence, you are then convinced that the defendant is guilty beyond a reasonable doubt." Defendant argues this presumption is undercut, and the burdens are reversed, by the further instruction that reasonable doubt "arises from a fair and rational consideration of all of the evidence, or the lack of evidence, in the case."

The instruction fully honors the presumption of innocence that "remains with the defendant throughout the trial" unless guilt is proven beyond a reasonable doubt. We reject defendant's argument that the "arises from" language could be read to mean that "a reasonable doubt does not exist at the outset of the case, but rather it 'arises' after the jurors consider all the evidence." The Supreme Court has recognized that "[n]umerous cases have defined a reasonable doubt as one 'based on reason which arises from the evidence or lack of evidence.'" *Johnson v. Louisiana,* 406 U.S. 356, 360, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (citing cases), *quoted in Jackson v. Virginia,* 443 U.S. at 317 n. 9, 99 S.Ct. 2781. The instruction that reasonable doubt can arise not just from the evidence but also from "lack of evidence" strengthens rather than undercuts the presumption of innocence.

We also reject defendant's challenge to language referring to reasonable doubt as one that "would cause reasonable people to hesitate in matters of importance to themselves." The Supreme Court has "repeatedly approved" instructions describing reasonable doubt as one that "would cause a reasonable person to hesitate to act." *Victor,* 511 U.S. at 20, 114 S.Ct. 1239 (citing *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954); *Hopt v. Utah,* 120 U.S. 430, 439–41, 7 S.Ct. 614, 30 L.Ed. 708 (1887)).

Defendant argues the Colorado instruction is defective because it refers to hesitating in "matters of importance" rather than matters of utmost importance. His brief quotes federal dicta that "there is a substantial difference between a juror's verdict of guilt beyond a reasonable doubt and a person making a judgment in a matter of

personal importance to him." *Scurry v. United States*, 347 F.2d 468, 470 (D.C.Cir. 1965). But the problem with the instruction in *Scurry* was its phrasing in terms of a person's being "willing to act" in important matters. *Id.; see also Holland*, 348 U.S. at 140, 75 S.Ct. 127 (while a reasonable doubt is better described as one that "would make a person hesitate to act, rather than the kind on which he would be willing to act," there was no reversible error in "willing to act" instruction) (citation omitted).

We conclude the Colorado pattern instruction accurately describes the presumption of innocence and the requirement of proof beyond a reasonable doubt. Accordingly, the instruction satisfies due process and does not create a risk of juries convicting on constitutionally insufficient proof.

### E. The Jury Selection Issues

 Defendant argues the trial court violated his "right to an impartial jury" by denying challenges for cause of two prospective jurors who indicated they were nervous about sitting on this case. Trial court rulings on for-cause challenges merit great deference, and are rarely overturned. *See, e.g., People v. Young*, 16 P.3d 821, 824–26 (Colo. 2001); *Carrillo v. People*, 974 P.2d 478, 484 (Colo.1999). We need not decide whether this is one of those rare cases, because neither prospective juror ultimately sat on the jury nor did defendant lose any peremptory challenge.

 There are two ways under Colorado law in which defendants may be prejudiced by erroneous denials of for-cause challenges. First, the right to a fair trial is prejudiced when a juror who should have been disqualified ultimately serves. *Morrison v. People*, 19 P.3d 668, 671 (Colo.2000). Second, the right to a full allotment of peremptory challenges is prejudiced "when a defendant is forced to utilize a peremptory challenge to correct a trial court's error in denying a challenge for cause, and thereafter exercises all available peremptory challenges on other prospective jurors." *People v. Macrander*, 828 P.2d 234, 244 (Colo.1992).

Defendant here did not suffer either type of prejudice. The first prospective juror was excused by *the prosecutor's* peremptory challenge, while the second prospective juror was excused because there ultimately were enough qualified jurors seated before her.

Defendant's rights accordingly were not violated even if he could show the trial court abused its discretion in denying both for-cause challenges. Defendant had an impartial jury because neither challenged juror ultimately sat on the jury. And his peremptory challenge rights were undiminished because he did not have to use a peremptory to remove either prospective juror.

### III. Conclusion

The judgment is affirmed as to the convictions on the two counts of attempted murder of the V children injured by gunfire, and reversed as to the convictions on the three remaining counts of attempted murder. The case is remanded for further proceedings consistent with this opinion.

Judge CASEBOLT and Judge ROY concur.