2012 COA 12

**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

v.

**Matthew Gene WARTENA,
Defendant–Appellant.**

No. 08CA0675.

Colorado Court of Appeals,
Div. II.

Feb. 2, 2012.

John W. Suthers, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

¶ 1 Defendant, Matthew Gene Wartena, appeals the judgment of conviction entered on jury verdicts finding him guilty of second degree burglary and attempted second degree murder, among other offenses. He asserts that those convictions must be vacated because the evidence is insufficient to prove that he intended to commit theft when entering a building and because the trial court erroneously refused to instruct the jury on lesser nonincluded offenses that embodied his theory of defense. We disagree and therefore affirm.

## I. Background

¶ 2 While using a stolen car, defendant and an accomplice looked for a license plate to conceal a stolen pickup truck. After finding a similar truck, defendant stole its license plate, took several items from another car parked nearby, and then returned to the car driven by his accomplice. A bystander had observed some of this activity, and as the

accomplice and defendant drove away, he called police and followed defendant's car.

¶ 3 Unable to lose the bystander, defendant told the accomplice to pull over. He covered his face with a bandana and stepped out of the car with a shotgun. Defendant fired two shots at the bystander's vehicle, striking the hood, windshield, and driver's side seat and headrest. The bystander ducked but sustained injuries from shotgun pellets and fragments of broken glass.

¶ 4 Defendant got back in the car and the accomplice drove away. By this time, police had responded, and a chase ensued, reaching speeds in excess of 100 miles per hour. While attempting to merge onto a highway, the accomplice lost control of the car and struck a SUV, causing it to roll over. The collision killed a passenger in the SUV and injured four other occupants.

¶ 5 Defendant and the accomplice abandoned the car and escaped by climbing a fence along the highway. As he ran, defendant lost his shoes and pants. The two found a barn, entered through an unlocked window, and spent the night there, evading a police search. Inside the barn, defendant took a pair of rubber irrigation boots to cover his bare feet. The next morning, defendant and the accomplice left the barn and were later arrested.

¶ 6 Prosecutors charged defendant with first degree extreme indifference murder of the SUV passenger, attempted first degree murder of the bystander, vehicular eluding resulting in death, first degree aggravated motor vehicle theft, four counts of vehicular eluding involving bodily injury, second degree burglary, first degree criminal trespass, and a crime of violence sentence enhancer.

¶ 7 At his first trial, defendant moved for a judgment of acquittal on the burglary charge based on insufficient evidence of his intent to commit a crime at the time of his entry into the barn. The court denied the motion. Defendant also requested the court to instruct the jury on the lesser nonincluded offenses of vehicular homicide, felony menacing, reckless endangerment, illegal discharge of a firearm, and prohibited use of a weapon. The court granted that request, and the jury found

defendant guilty of second degree burglary and first degree criminal trespass, as well as the lesser nonincluded offenses of felony menacing, reckless endangerment, illegal discharge of a firearm, and prohibited use of a weapon. The jury could not reach a unanimous verdict on the remaining counts, however, and the court declared a mistrial as to those charges.

¶ 8 The prosecution tried defendant a second time on charges of first degree extreme indifference murder concerning the SUV victim, but reduced the attempted first degree murder charge concerning the bystander to attempted second degree murder. It also retried the charges for vehicular eluding resulting in death, vehicular eluding resulting in bodily injury, and first degree aggravated motor vehicle theft. In the second trial, defendant requested the court to instruct the jury on the lesser nonincluded offenses of felony menacing, reckless endangerment, illegal discharge of a firearm, and prohibited use of a weapon, even though he had been convicted of those offenses in the first trial. The court rejected the request, reasoning that submission of these offenses would violate principles of double jeopardy and res judicata (claim preclusion). The court instructed the second jury, however, that attempted first degree assault, second degree assault, and third degree assault were lesser included offenses of the attempted second degree murder charge.

¶ 9 The court allowed defense counsel to assert during closing argument in the second trial that the prosecution could have brought more appropriate charges, such as felony menacing and illegal discharge of a firearm, but had chosen not to do so. The court, however, denied defendant's request to instruct the jury that he had already been convicted of those charges at a previous trial.

¶ 10 The second jury found defendant guilty of attempted second degree murder, vehicular eluding resulting in death, first degree aggravated motor vehicle theft, and four counts of vehicular eluding resulting in bodily injury. Jurors again failed to reach a unanimous verdict on the first degree murder count, which was subsequently dismissed on the prosecution's motion.

¶ 11 Defendant now appeals his conviction for second degree burglary resulting from his first trial and attempted second degree murder resulting from his second trial.

## II. Burglary Conviction

¶ 12 Defendant asserts that the trial court erroneously denied his motion for judgment of acquittal on the second degree burglary charge because there was insufficient evidence that he intended to commit theft when he entered the barn. He argues that he merely "sought refuge and rest" and could not have resolved to steal the boots that he was later found wearing until after he was already inside the barn. The People assert that Colorado law permits the intent element of second degree burglary to be formed while remaining unlawfully inside a building even if that intent was not present at entry. We agree with the People.

### A. Standard of Review

¶ 13 We review de novo the trial court's denial of a motion for judgment of acquittal asserting insufficient evidence. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). In doing so, we must determine whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable jury that the defendant is guilty of the charge beyond a reasonable doubt. *People v. Lehnert*, 163 P.3d 1111, 1115 (Colo.2007).

¶ 14 The proper construction of a statute is a question of law that we also review de novo. *People v. Manzo*, 144 P.3d 551, 554 (Colo.2006). "The power to define criminal conduct and to establish the legal components of criminal liability is vested in the General Assembly." *Id.* (quoting *Gorman v. People*, 19 P.3d 662, 665 (Colo.2000)). Accordingly, when determining the meaning of a statute, we must discern and give effect to the legislature's intent. *People v. Madden*, 111 P.3d 452, 457 (Colo.2005).

### B. Law

¶ 15 "A person commits second degree burglary, if the person knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property." § 18–4–203(1), C.R.S.2011.

¶ 16 In *Cooper v. People*, 973 P.2d 1234, 1240 (Colo.1999), the supreme court held that "a conviction for burglary requires proof that the defendant intended to commit a crime inside at the moment he first became a trespasser." Interpreting a previous version of the burglary statute in light of common law precedent, the court observed that "[i]f the defendant forms the intent to commit the crime after the trespass is under way, he or she may be guilty of that underlying crime (or attempt) and of trespass—but is not guilty of burglary." *Id.* at 1236.

¶ 17 The same year *Cooper* was decided, however, the General Assembly enacted H.B. 99–1304, titled "An Act Concerning the Strengthening of the Crime of Burglary." Ch. 113, sec. 3, 1999 Colo. Sess. Laws 327. As pertinent here, the bill amended section 18–4–203 by adding the phrase "after a lawful or unlawful entry" to the definition of second degree burglary. *Id.*

¶ 18 Two divisions of this court have held that the 1999 amendments legislatively overruled *Cooper* with respect to the intent element of burglary. In *People v. Larkins*, 109 P.3d 1003, 1004 (Colo.App.2004), the division concluded that "[s]oon after the *Cooper* decision was announced, the General Assembly amended the second degree burglary statute by adding the 'after a lawful or unlawful entry' language ... thus removing the requirement that intent to commit a crime exist at the time of entry." Consequently, the *Larkins* division observed:

> [I]f the jury concluded defendant had originally entered the apartment unlawfully without the intent to commit theft and, while remaining in the apartment unlawfully, intentionally committed theft, then the only proper verdict would have been

one finding defendant guilty of second degree burglary.

*Id.* at 1005.

¶ 19 In *People v. Oram,* 217 P.3d 883, 892 (Colo.App.2009), the division cited *Larkins* for the proposition that after the 1999 amendments, "[i]ntent to commit a crime against another person or property while in the dwelling can be formed either before or after the unlawful entry." The supreme court denied certiorari in *Larkins,* and affirmed *Oram* on other grounds. *See Oram v. People,* 255 P.3d 1032, 1033 (Colo.2011).

¶ 20 Nevertheless, in *People v. Fuentes,* 258 P.3d 320, 323 (Colo.App.2011), a division of this court cited *Cooper* for the proposition that "[t]he intent to commit a crime must be present at the very moment that the person trespasses." This discussion, however, came in the context of reviewing the history and policy rationale of the crime of burglary at common law and under subsequent Colorado statutes. The *Fuentes* division, for example, observed that "[c]ommon law burglary ... could be understood to be primarily concerned with protecting persons as opposed to property interests." *Id.* at 324 (citing *Cooper,* 973 P.2d at 1237–38). After discussing the statutory expansion of the common law definition, the division concluded that "[t]he first degree burglary statute [section 18–4–202] is ... primarily intended to protect property interests, not persons." *Id.* at 325. Thus, the *Fuentes* division's passing reference to *Cooper* was not integral to its holding that double jeopardy principles prevented a defendant from being convicted of two counts of first degree burglary based on a single unlawful entry resulting in assaults on multiple victims. Indeed, the primary issue in *Fuentes* was the distinction between crimes against persons and crimes against property.

### C. Application

¶ 21 Here, we agree with the People and with the other divisions of this court that have held that, after the 1999 amendments to section 18–4–203, "[i]ntent to commit a crime against another person or property while in the dwelling can be formed either before or after the unlawful entry." *Oram,* 217 P.3d at 892. The power to define

criminal conduct is vested in the General Assembly, *see Gorman,* 19 P.3d at 665, and we are persuaded by the plain language of section 18–4–203 that the legislature intended this result as part of an act "strengthening ... the crime of burglary." We presume that by amending the law the legislature intended to change it. *City of Colorado Springs v. Powell,* 156 P.3d 461, 465 (Colo. 2007).

¶ 22 Thus, we agree that legislative amendments have effectively overruled the *Cooper* court's holding that, for purposes of second degree burglary, intent to commit a crime must be present at the moment of entry. *See also Griego v. People,* 19 P.3d 1, 7–8 (Colo.2001) (disapproving of *Cooper* on other grounds).

¶ 23 We do not dispute defendant's assertion that burglary is complete when the burglar enters a building with the requisite intent regardless of whether he ultimately commits the intended crime. *See People v. Lucas,* 232 P.3d 155, 166–67 (Colo.App.2009). But conditions may be sufficient without being necessary, and it does not follow that entry with contemporaneous intent is the *only* way to commit burglary under section 18–4–203. The plain language of the statute makes clear that a person may be convicted of second degree burglary for knowingly remaining unlawfully in a building, after a lawful or unlawful entry, with intent to commit a crime. *See* § 18–4–203(1).

¶ 24 We perceive no conflict between the *Fuentes* decision and our conclusion here. Although the *Fuentes* division cited *Cooper* for a contrary rule, the context of that discussion was the history and purpose of the crime of burglary, not the statutory construction of the present section 18–4–203. If anything, the *Fuentes* division ultimately rejected the common law reasoning that it derived from *Cooper* and other cases by concluding that the current Colorado burglary statutes are "primarily intended to protect property interests, not persons." *Fuentes,* 258 P.3d at 325. The division addressed the element of intent at entry only to the extent it related to the conceptual distinction between crimes against persons and crimes against property. Thus, we reject the contention that *Fuentes*

somehow revived the *Cooper* court's holding with respect to intent and implicitly disapproved of the more recent interpretations of section 18–4–203 noted in *Larkins* and *Oram.*

■ ¶ 25 Here, it is undisputed that defendant entered the barn without permission and left wearing a pair of boots that did not belong to him. Even if defendant is correct that he entered the barn for the sole purpose of seeking refuge and did not intend to steal anything at that point, the evidence is sufficient to infer that he formed the requisite intent at some point before leaving the barn with the boots. As the *Larkins* division reasoned, if the jury concluded that defendant entered unlawfully without the intent to commit theft and, while remaining unlawfully, intentionally committed theft, then the only proper verdict would be one finding him guilty of second degree burglary. *See Larkins,* 109 P.3d at 1005.

¶ 26 In light of the above conclusions, we further conclude that the evidence here was sufficient to support the jury's verdict on the second degree burglary charge.

### III. Lesser Nonincluded Offenses

¶ 27 Defendant asserts that the trial court violated his right to due process of law by refusing to instruct the jury at his second trial on the lesser nonincluded offenses of reckless endangerment, felony menacing, illegal discharge of a firearm, and prohibited use of a weapon. He argues that those charges embodied his theory of defense to attempted second degree murder, and that he was entitled to receive instructions on those counts pursuant to *People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974), and subsequent cases recognizing the right of defendants in Colorado to request jury instructions on lesser nonincluded offenses. The People respond that principles of double jeopardy and claim preclusion prevented defendant from being tried a second time on charges for which he had previously been convicted at his first trial.

¶ 28 We conclude that the trial court's instructions on the lesser included offenses of attempted first degree assault, second degree assault, and third degree assault provided the jury with several options less severe than conviction for attempted second degree murder, which were supported by the evidence and consistent with defendant's theory of the case. Because we conclude that the court's instructions provided defendant with adequate due process, we need not decide whether submission to the jury of nonincluded offenses identical to those for which defendant was convicted in the first trial would violate double jeopardy or claim preclusion.

### A. Standard of Review

¶ 29 Colorado cases have not conclusively established the standard of appellate review applicable to denials of lesser nonincluded offense instructions. *People v. Rubio,* 222 P.3d 355, 360 (Colo.App.2009). The issue is complicated by the hybrid nature of such instructions. *Id.*

■ ¶ 30 Whether the record contains sufficient evidence to support instruction on a lesser offense is a factual inquiry reviewed for an abuse of discretion. *People v. Jimenez,* 217 P.3d 841, 870 (Colo.App.2008) (citing *United States v. Arnt,* 474 F.3d 1159, 1163 (9th Cir.2007)). However, there must also be a rational basis in the evidence to support a verdict acquitting the defendant of a greater offense and convicting him of the lesser offense. *People v. Trujillo,* 83 P.3d 642, 645 (Colo.2004); *Rubio,* 222 P.3d at 360. To the extent that it involves a comparison of statutory elements, the latter inquiry is a question of law subject to independent review. *See id.* (reviewing de novo the trial court's legally erroneous determination that prosecutorial discretion precluded a lesser offense instruction); *see also Arnt,* 474 F.3d at 1163 (whether the elements of the lesser offense are a subset of the elements of the charged offense is a legal question subject to de novo review).

■ ¶ 31 In determining whether the trial court has adequately informed the jury of a defendant's theory of defense, a reviewing court considers all the instructions given. *People v. Tippett,* 733 P.2d 1183, 1195 (Colo. 1987). No error occurs when a trial court refuses to give a defense theory instruction if the contents of other instructions suffice. *Id.*

¶ 32 Federal appellate courts review de novo the complete denial of theory of defense instructions. *See Rubio*, 222 P.3d at 360 (citing federal cases).

¶ 33 Here, there is no dispute that the record contains sufficient evidence to support instruction on the lesser nonincluded offenses and that there is a rational basis in the evidence to support a verdict acquitting defendant of attempted second degree murder and convicting him of the lesser nonincluded offenses. Indeed, the first jury's verdict convicted defendant of the lesser nonincluded offenses. Further, we are not called upon here to compare statutory elements of offenses.

¶ 34 Even so, we conclude that de novo review is appropriate here, inasmuch as the trial court made its determination based on double jeopardy and claim preclusion principles, issues that generally would warrant de novo review. *See People v. Tillery*, 231 P.3d 36, 48 (Colo.App.2009) (where a sentencing court makes a ruling based on double jeopardy, either party could appeal, and review would be de novo), *aff'd on other grounds sub nom. People v. Simon*, 266 P.3d 1099 (Colo.2011); *Camp Bird Colo., Inc. v. Bd. of County Comm'rs*, 215 P.3d 1277, 1281 (Colo.App.2009) (if the facts in the case are undisputed and the question of preclusion either can be answered by review of the judgment or can be determined solely by reviewing the record, it is strictly a question of law and thus reviewed de novo); *see also Trujillo*, 83 P.3d at 645–47 (reviewing de novo similar contentions).

### B. Law

¶ 35 A defendant is entitled to have the court instruct the jury on the defense theory of the case. *Rivera*, 186 Colo. at 28, 525 P.2d at 434. The supreme court in *Rivera* announced, "[W]e see no reason to bar the submission of an instruction on a lesser offense—though not included—where it is supported by the evidence and the defendant wants it." *Id.* Such an instruction "is tantamount to a defendant's consent to an added count being charged against him" and "can insure better trials and fairer verdicts." *Id.* at 28–29, 525 P.2d at 434. Without the op-

tion to convict the accused of a lesser offense, "the jury may be aware of the commission of a crime, not the principal charge, and yet convict the defendant of the greater crime." *Id.* at 29, 525 P.2d at 434.

¶ 36 A lesser nonincluded offense instruction is tantamount to a defendant's theory of the case instruction. *People v. Skinner*, 825 P.2d 1045, 1047 (Colo.App.1991). Because the merger doctrine applicable to lesser included offenses does not preclude a defendant from being convicted of both the original charge and a lesser nonincluded offense, "a defendant's request for a lesser non-included offense instruction is in the nature of a strategy." *Id.* at 1047–48; *accord Arko v. People*, 183 P.3d 555, 558 (Colo.2008). A defendant requesting a lesser nonincluded offense instruction risks being convicted of multiple counts in return for the chance that the jury will acquit him of the most serious charges. *See Rivera*, 186 Colo. at 28–29, 525 P.2d at 434.

¶ 37 In *Skinner*, a defendant charged with sexual assault requested jury instructions on the lesser nonincluded offenses of theft and patronizing a prostitute. A division of this court held that the trial court had technically erred by characterizing these charges as lesser included offenses, but it held the error harmless and affirmed the defendant's sexual assault conviction. The division observed:

> [T]he jury was correctly instructed of its option to acquit the defendant on the greater offense and convict him of a lesser charge. Thus, Skinner was protected from the concern raised in *Rivera* and [*People v. Bustos*, 725 P.2d 1174 (Colo.App.1986)], namely, that the jurors would convict him of the charged offense solely because they were aware that he had committed a crime.

*Skinner*, 825 P.2d at 1048.

¶ 38 Similarly, the supreme court in *Trujillo* held that a defendant charged with first degree assault on police officers was not entitled to instructions on the lesser nonincluded offenses of resisting arrest and reckless endangerment where the jury was instructed on other lesser nonincluded offenses of obstructing a peace officer and prohibited

use of a weapon. *Trujillo*, 83 P.3d at 648. Although there was some basis in the evidence for acquittal on the assault charges and conviction of the requested lesser offenses, the court perceived no violation of the defendant's due process rights because the jury instructions that were given adequately conveyed his theory of defense. *See id.* at 645–46. The court remarked:

> Taken together, the jury instructions actually given in the third trial encompassed Trujillo's theory of defense; that he was justified in shooting the gun in his home and he lacked the specific intent required for a conviction of first-degree assault.... Thus, the instructions on the lesser offenses addressed the concern, that if a trial court does not instruct a jury on a lesser offense, then the jury will think it had no option but to convict on the greater offense.

*Id.* at 648.

¶ 39 The conviction on appeal in *Trujillo* occurred in a third jury trial following two previous trials that did not reach a verdict on the assault charge. The trial court there had raised the same double jeopardy concerns at issue here as grounds for denying the requested instruction. A division of this court reversed, holding that the instruction was not barred by double jeopardy because the court could avoid multiple convictions for the same offense at sentencing. *See People v. Trujillo*, 62 P.3d 1034, 1036 (Colo.App.2002). The supreme court, however, declined to reach the double jeopardy issue, upholding the defendant's conviction on the alternative ground that the trial court had adequately instructed the jury on his theory of defense.

¶ 40 Thus, although *Trujillo* did not resolve the tension between double jeopardy principles and lesser nonincluded offenses, it stands for the proposition that a trial court need not instruct the jury on all possible nonincluded offenses so long as its instructions adequately convey the defendant's theory of the case.

## C. Application

¶ 41 Here, similar to the court in *Trujillo*, we conclude that the trial court's instructions on the lesser included offenses of attempted first degree assault, second degree assault, and third degree assault adequately conveyed defendant's theory of defense. The jury had the option to convict defendant of several lesser charges consistent with his theory of the case, but it found instead that every element of attempted second degree murder had been proved beyond a reasonable doubt.

¶ 42 Defendant's theory of the case with respect to the attempted murder charge was that he did not intend to kill or injure the bystander, but merely fired warning shots to scare him off and disable his vehicle so that defendant and his accomplice could escape. Defendant also argued that his shotgun was loaded with a type of birdshot meant for skeet shooting that is not lethal except at very close range.

¶ 43 During closing arguments, defense counsel conceded that defendant's actions were "dumb" and "wrong" but argued:

> What was really going on here was a felony menacing, but they didn't charge that, so you don't have that when you look at the lesser-included offenses. The one thing that maybe fits with all of this is criminally negligent assault, the third degree assault. Clearly[,] shooting a shotgun at a car is criminally negligent, and certainly [the bystander] did get a little bit of bodily injury when that one beebee went inside his body and the glass cut his body. There's no question about that.

¶ 44 Thus, defendant did not deny that he had committed a crime or acted with a culpable mental state of at least criminal negligence. His theory of defense was simply that the prosecution had overcharged the offense, and he was fully permitted to argue that theory in closing.

¶ 45 The crime of attempted second degree murder requires a substantial step, *see* § 18–2–101, C.R.S.2011, toward knowingly causing the death of a person. § 18–3–103(1), C.R.S. 2011. The lesser included offense of attempted first degree assault, by contrast, requires only a substantial step toward intentionally causing serious bodily injury by means of a deadly weapon. *See* § 18–3–202(1)(a), C.R.S.2011. Second degree assault

involves the intentional causation of bodily injury—as opposed to serious bodily injury—by means of a deadly weapon. *See* § 18–3–203(1)(b), C.R.S.2011. Third degree assault requires only that the defendant cause bodily injury with a deadly weapon while acting with criminal negligence. *See* § 18–3–204(1)(a), C.R.S.2011.

¶ 46 We disagree with defendant's contention that "unlike in *Trujillo*, the contents of the remaining instructions did not suffice to present to the jury [his] theory of defense at all." To the contrary, the jury was specifically instructed that if it was not satisfied beyond a reasonable doubt that defendant was guilty of attempted second degree murder, it could convict him of either attempted first degree assault, second degree assault, or third degree assault. If the jury credited defendant's theory that he merely intended to scare away the bystander without causing death or injury, it could have convicted him of third degree criminally negligent assault. Similarly, if the jury believed that defendant loaded his shotgun with non-lethal ammunition, it could have convicted him of attempted first degree assault or second degree assault, depending on the severity of the bodily injury that it found he intended to inflict. Logically, if the jury did not think defendant was guilty of attempted murder, it would have chosen a lesser included offense. That the jury did not do so indicates that it considered and rejected both of these theories in favor of conviction for attempted second degree murder. *See People v. Ibarra*, 849 P.2d 33, 39 (Colo.1993) (absent a showing of jury bias, it is presumed that the jury understood and heeded the trial court's instructions).

¶ 47 We do not dispute the general rule that a lesser nonincluded offense instruction should be given when there is a rational basis in the evidence to support a verdict acquitting the defendant of a greater offense while convicting him of the lesser offense. *See Trujillo*, 83 P.3d at 645. We do not, however, read *Rivera*—or any subsequent Colorado case—to suggest that a criminal defendant has an absolute due process right to be tried on each and every lesser charge he requests. Rather, the lesser nonincluded offense doctrine reflects the public

policy rationale that juries should not face an all-or-nothing decision between convicting a defendant as charged and acquitting him entirely, particularly when it is clear that some crime has been committed and the defendant is not completely blameless. *See Rivera*, 186 Colo. at 29, 525 P.2d at 434; *Skinner*, 825 P.2d at 1048.

¶ 48 The trial court here acknowledged this concern when allowing defense counsel to argue that the prosecution should have brought lesser charges. It observed:

> I think our Supreme Court realizes that there ... can at least arguably be circumstances in which the prosecutor overcharges thinking that a jury given the choice between acquittal and conviction is going to convict; and if the only thing in front of them is a charge that might be higher than that which the jury would be compelled to find, they might, you know, hold their nose and find somebody guilty of something that is higher than what they think is fair; and, therefore, they let the defense put in other charges so that the jury can consider it.

Consistent with this observation, defense counsel told the jury during closing arguments, "[T]he prosecution wants you to up the ante in this case and find [defendant] guilty of things that are way more serious than what was really going on here." As noted above, the defense then specifically argued that it would be more appropriate to convict defendant of third degree assault.

¶ 49 Thus, the jury here was not presented with an all-or-nothing decision and could have convicted defendant of a lesser charge consistent with his asserted theory of the case. Although the court denied defendant's requested instruction, "failure to give a lesser non-included offense instruction may be harmless—and perhaps may not even be error—if 'the defendant's theory could be argued under the other instructions given by the court.'" *Rubio*, 222 P.3d at 362 (quoting *Trujillo*, 83 P.3d at 645).

¶ 50 As in *Trujillo*, the instructions actually given at trial encompassed defendant's theory of defense that he did not intend to kill or injure the bystander but

merely wanted to scare him away. *See Trujillo,* 83 P.3d at 648. Therefore, defendant "was protected from the concern raised in *Rivera* … that the jurors would convict him of the charged offense solely because they were aware that he had committed a crime." *Skinner,* 825 P.2d at 1048. There is no constitutional right to a lesser included instruction in a noncapital case, much less to a lesser nonincluded offense instruction. *Rubio,* 222 P.3d at 361.

¶ 51 We recognize that the jury in *Trujillo* was instructed on lesser *nonincluded* offenses, as opposed to the lesser *included* offense instructions given here. However, we do not perceive a meaningful difference for purposes of this appeal. As the *Skinner* division observed, the distinction between lesser included and nonincluded offenses is important when determining whether convictions merge, but may be a mere technicality in the due process context when neither characterization results in prejudice to the defendant. *See Skinner,* 825 P.2d at 1048. Moreover, the same legal standard governs both types of instructions. *See Larkins,* 109 P.3d at 1004 ("A defendant is entitled to an instruction on a lesser offense, included or nonincluded, as long as there is a rational basis in the evidence to support a verdict acquitting the defendant of the greater offense and convicting him or her of the lesser."); *Rubio,* 222 P.3d at 360–61 ("This, not coincidentally, is the same standard governing entitlement to lesser included offense instructions.").

¶ 52 We are not persuaded by defendant's assertion that *Trujillo* is not applicable here because in that case, the court concluded there was no meaningful difference between the particular lesser nonincluded offenses submitted to the third jury and the offenses previously submitted, whereas here, the lesser included offenses all included a bodily injury element and had a specific mens rea, and most of the offenses he tendered had no mens rea at all. But there was no dispute that the bystander suffered some bodily injury when the beebee from the shotgun blast entered his body and he received cuts from the broken glass. And we fail to perceive how the jury could have agreed with defendant's theory of the case yet failed to convict him of one of the lesser included offenses.

¶ 53 Thus, we conclude that the *Trujillo* court's holding, that due process is satisfied where the lesser offense instructions given embody a defendant's theory of the case, applies to included offenses, as well as to nonincluded offenses. Where, as here, an included offense instruction allows jurors to acquit a defendant of a purportedly overcharged offense while convicting him of a lesser charge consistent with his theory of defense, the *Rivera* policy concerns are addressed.

¶ 54 Accordingly, we perceive no violation of due process in the trial court's refusal to instruct the jury on additional lesser offenses, regardless of whether defendant was convicted of those charges at his first trial. Hence, we need not reach the double jeopardy issue.

¶ 55 The judgment of conviction is affirmed.

Judge HAWTHORNE and Judge J. JONES concur.