The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Victor Noel TORRES, Defendant–Appellee.

The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Daniel James SOLORIO, Defendant–Appellee.

Nos. 92SA192, 92SA215.

Supreme Court of Colorado, En Banc.

March 15, 1993.

As Modified on Denial of Rehearing April 12, 1993.

**912**

G.F. Sandstrom, Dist. Atty., Tenth Judicial Dist., David K. Gardner, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Janet Fullmer Youtz, Deputy State Public Defender, Denver, for defendant-appellee Victor Noel Torres.

David F. Vela, Colorado State Public Defender, Samuel Santistevan, Deputy State Public Defender, Denver, for defendant-appellee Daniel James Solorio.

Justice ERICKSON delivered the Opinion of the Court.

The prosecution appeals from judgments of dismissal entered by the trial courts in these two cases that have been consolidated for review in this court. The trial courts granted the motions of the defendants, Daniel J. Solorio and Victor N. Torres, to dismiss charges of felony menacing, which were filed pursuant to section 18–3–206, 8B C.R.S. (1986).[1] The trial courts ruled that the conduct of felony menacing proscribed by section 18–3–206, a class five felony, is pragmatically indistinguishable from the conduct proscribed by section 18–9–106(1)(f), 8B C.R.S. (1986), disorderly conduct with a deadly weapon, a class two misdemeanor.[2] Therefore, the trial courts held that section 18–3–206, as applied to the defendants, violated their equal protection rights under article II, section 25 of the Colorado Constitution.[3] We disagree and reverse the trial courts' judgments of dismissal.

## I

### A

On January 25, 1992, Terry Van Buskirk, a Pueblo policeman, observed two cars, a Plymouth and a Pontiac, driving side-by-side down a street in Pueblo. Van Buskirk observed a passenger in the Pontiac, who was later identified as Torres, pull his body out of the Pontiac while it was moving. While sitting on the door, Torres pulled a shotgun from inside the Pontiac and point-

---

**1.** Section 18–3–206 provides:

> A person commits the crime of menacing if, by any threat or physical action, he knowingly places or attempts to place another person in fear of imminent serious bodily injury. Menacing is a class 3 misdemeanor, but, if committed by the use of a deadly weapon, it is a class 5 felony.

Both defendants were charged with the crime of menacing by the use of a deadly weapon, which is commonly referred to as felony menacing.
Section 18–1–901(3)(e), 8B C.R.S. (1986), defines deadly weapon as:

> "Deadly weapon" means any of the following which in the manner it is used or intended to be used is capable of producing death or serious bodily injury:
> (I) A firearm, whether loaded or unloaded;
> (II) A knife;

**2.** Section 18–9–106(1)(f) provides:

> (1) A person commits disorderly conduct if he intentionally, knowingly, or recklessly:

> . . . .
> (f) Not being a peace officer, displays a deadly weapon in a public place in a manner calculated to alarm.

**3.** The fact that disorderly conduct *must occur* in a public place while felony menacing can occur in either a public or private place is, we conclude, a sufficient distinguishing factor such that the felony menacing statute is not facially unconstitutional. Proscribing conduct in public places which would alarm the citizenry is, in our view, a difference in fact that is reasonably related to proper criminal legislation. *See People v. Marcy*, 628 P.2d 69, 74 (Colo.1981) (stating that statutory classifications of crimes must be based on differences that are real in fact, and reasonably related to the general purposes of criminal legislation); *People v. Hulse*, 192 Colo. 302, 304, 557 P.2d 1205, 1206 (Colo.1976) (holding that it is only where the *same* criminal conduct is proscribed in both statutes that the equal protection principle arises).

ed it over the top of the Pontiac at three men in the Plymouth. The three men later told Van Buskirk that they all saw Torres point the shotgun at them and that they all feared for their lives. After observing Torres point the shotgun at the men in the Plymouth, Van Buskirk attempted to stop the Pontiac. Instead of pulling over as directed, the driver of the Pontiac led Van Buskirk on a high-speed chase through Pueblo, which ended when the Pontiac crashed. Torres was apprehended and charged with felony menacing.

Torres filed a motion to suppress statements he had made following his arrest as well as a motion to dismiss the felony menacing charges as a violation of his rights to equal protection of the laws pursuant to article II, section 25 of the Colorado Constitution. Torres alleged that the felony menacing statute, a class five felony, was indistinguishable from the disorderly conduct with a deadly weapon statute, a class two misdemeanor.

Following a hearing, the trial court granted Torres' motion to dismiss the felony menacing charges because it held that the statute was unconstitutional. The trial court equated the phrases "displaying a deadly weapon in a manner calculated to alarm" and "placing another person in fear of imminent serious bodily injury by use of a deadly weapon," as the *actus reus* of each crime.[4] The trial court therefore held that Torres had sustained his burden of establishing that the felony menacing statute was unconstitutional.

### B

On July 1, 1991, Solorio stole a bottle of beer from a convenience store in Pueblo. When two store employees confronted Solorio in the parking lot, Solorio produced and displayed an eight-inch knife in a threaten-

ing manner and ran from the area. Both victims testified that Solorio's waving of the knife placed them in fear that they would be stabbed. The police later arrested Solorio at a fast food restaurant.

On July 8, 1991, the prosecution filed an information charging Solorio with two counts of aggravated robbery. On May 18, 1992, a preliminary hearing was held on the aggravated robbery charges. Following the hearing, the court found no probable cause to bind Solorio over on the charges, but that there was probable cause to support two counts of felony menacing. Solorio then moved for dismissal of the felony menacing charges based on the trial court's earlier ruling in *People v. Victor Torres*, No. 92CR89 (March 31, 1992). The trial court granted Solorio's motion and dismissed the charges.

### II

### A

We consolidated the two cases on appeal. The common issue in these cases is whether the felony menacing statute violates the equal protection clause of article II, section 25 of the Colorado Constitution because the elements of felony menacing are indistinguishable from the elements of disorderly conduct with a deadly weapon.

The equal protection clause guarantees like treatment of all who are similarly situated. *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316 (Colo.1975). The classification of persons under the criminal law must be under legislation that is reasonable and not arbitrary. *People v. Marcy*, 628 P.2d 69 (Colo.1981); *Calvaresi*, 188 Colo. at 281–82, 534 P.2d at 318. Accordingly, there must be substantial differences having a reasonable relationship to the persons involved and the public purpose to be

**4.** The trial court stated:
   As I indicated earlier, I think that the elements are so similar as to be without cognizable distinction.
   I agree that the *mens rea* is the same, and the argument with respect to the meaning of alarm is very persuasive. If you are alarmed by a deadly weapon is to find in the disorderly conduct statute, that alarm would have to

be fear that the deadly weapon is going to be used and the deadly weapon has to be used in the manner in which it is constructed, that is what makes it deadly, and if it's deadly, it's going to cause serious bodily injury, so I think you're right. And there is then a disparate penalty for felony menacing as compared to disorderly conduct under (1)(f), publicly displaying a deadly weapon.

achieved. *Id.* When two criminal statutes proscribe different penalties for the same conduct, a defendant who is convicted and sentenced under the harsher statute is denied equal protection of the laws. *People v. Mozee*, 723 P.2d 117, 126 (Colo.1986). In reviewing constitutional challenges to statutory provisions, legislation adopted by the General Assembly is presumed to be constitutional and the party asserting the unconstitutionality of any statute has the burden of proving such an assertion beyond a reasonable doubt. *People v. Wilhelm*, 676 P.2d 702, 704 (Colo.1984); *People v. Rostad*, 669 P.2d 126 (Colo.1983); *People v. Caponey*, 647 P.2d 668 (Colo.1982). If a statute is susceptible to different interpretations, one of which comports with constitutional requirements, the constitutional interpretation must be adopted. *Wilhelm*, 676 P.2d at 704–05; *see also Bolles v. People*, 189 Colo. 394, 541 P.2d 80, 83 (1975) (stating that whenever possible, a statute should be construed as to obviate or reduce constitutional infirmities).

### B

The defendants claim that the felony menacing statute and the disorderly conduct statute as applied to their cases have the same *mens rea*, knowingly, and the same *actus reus*, the display of a deadly weapon in such a manner as to place another in fear.

The elements of the crime of menacing with a deadly weapon are that a defendant, using a deadly weapon, by threat or physical action, knowingly placed or attempted to place another person in fear of imminent serious bodily injury. *See* § 18–3–206, 8B C.R.S. (1986).

The elements of the crime of disorderly conduct with a deadly weapon are that a defendant, not being a peace officer, intentionally, knowingly, or recklessly, displayed a deadly weapon, in a public place, in a manner calculated to alarm. *See* § 18–9–106(1)(f), 8B C.R.S. (1986).

The trial court accepted the defendants' contentions that "placing or attempting to place another person in fear of imminent serious bodily injury by threat or physical action by the use of a deadly weapon," the *actus reus* of felony menacing, is the equivalent to "displaying a deadly weapon in a manner calculated to alarm," the *actus reus* of disorderly conduct with a deadly weapon.

The prosecution agrees that the *mens rea* requirement for the two offenses is the same, but asserts that the *actus reus* involved in the crimes is different. We agree with the prosecution that although the two statutes are not perfectly drafted, the *actus reus* required by each of the statutes is sufficiently distinguishable so that charging the defendants with either crime if the elements of each crime is satisfied is not unconstitutional. *See People v. Bossert*, 722 P.2d 998, 1003 (Colo.1986) (stating that the fact that particular conduct may violate two statutes is no basis for concluding that one of them violates equal protection), *cert. denied*, 493 U.S. 845, 110 S.Ct. 137, 107 L.Ed.2d 96 (1989); *People ex rel. Russel v. District Court*, 185 Colo. 78, 85, 521 P.2d 1254, 1255 (1974) (stating that it is not the role of this court to act as an overseer of all legislative action and declare statutes unconstitutional merely because we believe they could be better drafted or more fairly applied).

Generally, in order to subject a person to criminal liability, there must be a concurrence of the *actus reus*, an unlawful act, and the *mens rea*, a culpable mental state. *Marcy*, 628 P.2d at 73; *see United States v. Bailey*, 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). The parties do not dispute that the *mens rea* required for the crimes charged in these cases is the same. The dispositive question in these cases is whether the *actus reus* for felony menacing is indistinguishable from the *actus reus* for disorderly conduct with a deadly weapon.

We addressed the specific question raised in these cases in *People v. Crump*, 769 P.2d 496 (Colo.1989). In *Crump*, the defendant was charged with felony menacing for knowingly placing or attempting to place the victim in fear of imminent serious bodily injury. The trial court in *Crump*

submitted an instruction to the jury, which stated that the *mens rea* requirement of felony menacing required that the defendant specifically intend to place the victim in fear of imminent serious bodily injury. *Crump*, 769 P.2d at 497; *see People v. Stout*, 193 Colo. 466, 568 P.2d 52 (1977) (holding that an essential element of the crime of felony menacing is a specific intent to cause fear). The trial court submitted an additional instruction on the misdemeanor offense of disorderly conduct with a deadly weapon. *Crump*, 769 P.2d at 497–98. The jury returned a verdict finding the defendant guilty on the disorderly conduct charge. *Id.* at 498.

In *Crump*, the prosecution appealed the trial court's decision that the crime of felony menacing required the specific intent to place another person in fear of imminent serious bodily injury. We disapproved of the trial court's ruling and held that the crime of felony menacing is not a specific intent offense because the General Assembly had changed the *mens rea* requirement from "intentionally" to "knowingly" in 1977. *Id.* The defendant raised the same constitutional argument that the defendants have asserted in the present cases. The defendant claimed that:

> If the statutory definition of felony menacing is construed as a general intent crime, equal protection of the law would be violated because the statute would proscribe as a class 5 felony, which carries a presumptive sentence of one to four years imprisonment, the same conduct proscribed by the crime of disorderly conduct with a deadly weapon, § 18–9–106(1)(f), 8B C.R.S. (1986), a class 2 misdemeanor punishable by a maximum sentence of twelve months, or a fine of $1,000, or both.

*Id.* at 498 n. 4. We rejected this contention as "devoid of merit," and stated that equal protection is not violated by statutes that impose disparate criminal sanctions for conduct that is different, albeit related. *Id.* The "crime of disorderly conduct with a deadly weapon requires the intentional, knowing, or reckless display of a deadly weapon in a public place in a manner calculated to alarm, and, in contrast to felony menacing, *does not involve the placing of another person in fear of imminent serious bodily injury by the use of a deadly weapon.*" *Id.* (emphasis added).

Contrary to the defendants' assertion, *Crump* specifically stated that the phrase "calculated to alarm," as used in the disorderly conduct statute, is broader than, and not equivalent to, the "placing another person in fear of serious imminent bodily injury by use of a deadly weapon." For purposes of article II, section 25, more specific *actus reus* is sufficient to distinguish between different types of prohibited conduct. *See People v. Czajkowski*, 193 Colo. 352, 568 P.2d 23 (1977) (holding that because the act of stealing automobile parts was more specific than the act of stealing generally, establishing a greater sanction for one crime than the other does not violate equal protection).

The display of a deadly weapon in an alarming manner in a public place constitutes the *actus reus* of disorderly conduct with a deadly weapon.[5] In contrast, the more specific act of "placing another person in fear of imminent serious bodily injury by the use of a deadly weapon" constitutes the *actus reus* of felony menacing. A person can display a deadly weapon in an objectively alarming manner in a public place without placing anyone in fear of imminent serious bodily injury.[6] "[C]rimi-

---

5. The alarming manner with which a deadly weapon is displayed is an objective element of the crime of disorderly conduct with a deadly weapon. For purposes of criminal liability under the statute, it is not relevant whether anyone was actually alarmed by the defendant's conduct, if the act of displaying the deadly weapon would alarm a reasonable person observing the conduct.

6. The victim of the crime of disorderly conduct is anyone who is exposed to the conduct of the perpetrator. In short, it is the general public, not a specific individual fearful of imminent serious bodily injury, who is the victim of disorderly conduct. For example, a person may intentionally, knowingly, or recklessly draw a knife in a public square and wave it in the air. This conduct could be objectively alarming to members of the general public who viewed the perpetrator's actions and still not place any

**916**

nal legislation is not constitutionally infirm simply because the offender's conduct may violate more than one statutory proscription. It is only when 'the *same conduct* is proscribed in two statutes and *different criminal sanctions* apply, that problems arise under equal protection.' " *People v. Velasquez*, 666 P.2d 567, 569 (Colo.1983) (citing *People v. Taggart*, 621 P.2d 1375, 1382 (Colo.1981)). Moreover, the fact that the prosecution, under this statutory scheme, may exercise discretion as to the statute under which it wishes to prosecute does not violate the tenets of equal protection. *People v. Hulse*, 192 Colo. 302, 305, 557 P.2d 1205, 1206 (Colo.1976).

### III

Torres pointed a shotgun at the passengers of a moving automobile. Solorio pulled a knife on two convenience store clerks to effectuate an escape. Each knowingly engaged in acts that could possibly subject them to criminal liability for disorderly conduct with a deadly weapon. However, each defendant's action was also much more specific than is required by the disorderly conduct statute. It does not violate article II, section 25 of the Colorado Constitution to also subject the defendants to potential criminal liability under the felony menacing statute which prescribes more severe penalties for a more specific criminal threat. Accordingly, we reverse the rulings of the trial court declaring section 18–3–206, 8B C.R.S. (1986), unconstitutional and remand the cases with directions to reinstate the charges of felony menacing against the defendants.

member of the general public in fear of serious imminent bodily injury. The less specific act of waving a knife in a public square in an objectively alarming manner would allow the perpetrator to be exposed to possible criminal liability for his conduct under the disorderly conduct statute, but because he did not commit the more specific act of placing another person in fear of imminent serious bodily injury, he could not be exposed to potential criminal liability under the felony menacing statute.