2015 COA 56

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Gilbert Arturo NARANJO, Defendant–Appellant.**

**Court of Appeals No. 13CA1063**

Colorado Court of Appeals, Div. II.

Announced May 7, 2015

Rehearing Denied June 18, 2015

Cynthia H. Coffman, Attorney General, John T. Lee, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Joseph P. Hough, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE DUNN

¶ 1 Defendant, Gilbert Arturo Naranjo, appeals the judgment of conviction entered on jury verdicts finding him guilty of two counts of felony menacing. He contends that the trial court erred in declining to instruct the jury on the lesser non-included offense of disorderly conduct with a deadly weapon. We agree, and because we conclude the error was not harmless, we reverse and remand for a new trial.

## I. Background

¶ 2 After a highway confrontation, Naranjo was charged with two counts of felony menacing. The victims, a father and daughter, testified at a jury trial. The daughter testified that, as her father was merging onto the highway in their truck, Naranjo cut them off. Her father, who she characterized as a "fast driver," threw up his hands in frustration and attempted to pass Naranjo. After several attempts to pass Naranjo's vehicle, during which Naranjo repeatedly maneuvered in front of them, her father slowed down. Naranjo also slowed down and, according to the daughter, rested a gun on the inside of his open window and stated, "You don't want to fuck with me." The father testified consistently with his daughter's version of the events, but added that Naranjo repeated his threat twice and pointed the gun at his daughter. Both father and daughter testified that they were in fear when they saw the gun. And the father testified that, upon seeing the gun, he quickly braked and called 911. He then began to follow Naranjo, stating that he "[ran] red lights and stop signs" to keep up.

¶ 3 Naranjo also testified at trial. He stated that as he merged onto the highway, a truck began tailgating him. As a result, Naranjo slowed down, hoping that the truck would go around him. As he braked, Naranjo noticed that his gun—which he testified he had inadvertently left in his vehicle after target shooting the day before—was sliding off the passenger seat. Afraid that the gun would accidentally discharge if it fell to the floor, Naranjo "reached over to pick it up and ... put it into [the] glove box." He

further testified that, as he was putting the gun in the glove box, the truck began to pass him and the driver yelled at him to "pull over." Naranjo denied that he threatened the occupants of the truck or intended to put them in fear. He denied pointing or brandishing his gun at anyone, but admitted that he "raised the gun up in the air" in order to get it into the glove box. Although he was unaware that the people in the truck had seen the gun, Naranjo testified that he would understand if they "misinterpreted the fact that I was putting the gun in the glove box as maybe me pulling it out."

¶ 4 After resting his case, Naranjo requested that the jury be instructed on the lesser non-included offense of disorderly conduct with a deadly weapon. In support of his request, he argued that the testimony supported a conclusion that he recklessly displayed a deadly weapon in a public place in a manner calculated to alarm. Specifically, he argued that the evidence demonstrated that he chose to handle his gun in plain view in the midst of a "rolling confrontation" on a public highway, an act that was "inherently" alarming.

¶ 5 Stating that a lesser non-included offense instruction must "fit the [d]efendant's theory of the case," the trial court denied Naranjo's request. The court found that "the theory put forth by the [d]efendant is that he simply reached over, inside of his car, and put the gun directly into ... the glove box." The trial court noted that Naranjo's "clear testimony was that there was absolutely no calculation to alarm whatsoever, and that ... he wasn't consciously disregarding anything, he was simply putting the gun away in a perfectly benign way with perfectly benign mens rea." As a result, the court concluded that there was "absolutely nothing about what [Naranjo] did that would be even reckless or frankly in a public place." Thus, the court could not "find any way to bend the facts that [Naranjo was] putting forth in his theory of the case that would mean that this was disorderly conduct with a deadly weapon."

¶ 6 After receiving additional time to consider other possible defense strategies, Naranjo requested an instruction on the lesser

non-included offense of harassment for his "actions not related to the gun." The trial court granted the request.

¶ 7 The jury convicted Naranjo of the two felony menacing counts, but acquitted him of the two added harassment counts. II. Lesser Non-Included Offense Instruction

¶ 8 Naranjo contends that the trial court reversibly erred in declining to instruct the jury on the lesser non-included offense of disorderly conduct with a deadly weapon. We agree.

A. Governing Standards

¶ 9 A lesser non-included offense is an offense less serious than the charged offense. *People v. Garcia*, 17 P.3d 820, 826 (Colo.App.2000). It arises from the same facts but contains at least one element different from the original charge. *Id.* A lesser non-included offense instruction is tantamount to a theory of the case instruction. *People v. Skinner*, 825 P.2d 1045, 1047 (Colo. App.1991). Typically, by asking for such an instruction, a defendant denies the original charge, but admits committing a lesser offense which carries a less severe penalty. *Id.* Nothing, however, prevents a jury from convicting a defendant of both the original offense and any lesser non-included offense. *Id.* at 1047–48.

¶ 10 No absolute right to a lesser non-included offense instruction exists. But such an instruction should be given if (1) it is supported by the evidence; (2) the defendant requests it; and (3) there is a rational basis for the jury to acquit the defendant of the offense charged and simultaneously find him guilty of the lesser offense. *People v. Rivera*, 186 Colo. 24, 28, 525 P.2d 431, 434 (1974); *Skinner*, 825 P.2d at 1047; *see also Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988) ("As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.").

¶ 11 Whether the record contains evidentiary support for a lesser non-included offense instruction is a factual inquiry which we review for an abuse of discretion. *People*

*v. Wartena,* 2012 COA 12, ¶ 30, 296 P.3d 136. But where, as here, a trial court interprets statutory elements in determining whether a rational basis exists to support a verdict acquitting the defendant of a greater offense and convicting him of the lesser offense, we review the trial court's conclusions de novo. *Id.*

### B. Disorderly Conduct with a Deadly Weapon

¶ 12 As relevant here, a person commits disorderly conduct with a deadly weapon if he recklessly displays a deadly weapon in a public place in a manner calculated to alarm. § 18–9–106(1)(f), C.R.S.2014. A person acts recklessly if he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists. § 18–1–501(8), C.R.S.2014.

¶ 13 Our supreme court has interpreted the actus reus of disorderly conduct with a deadly weapon as "[t]he display of a deadly weapon in an alarming manner in a public place." *People v. Torres,* 848 P.2d 911, 915 (Colo.1993). Whether a deadly weapon is displayed in an alarming manner is an objective element of the crime. *Id.* at 915 n. 5. That is, to establish the crime of disorderly conduct with a deadly weapon, it is not relevant whether anyone was actually alarmed, if the act of displaying the deadly weapon would alarm a reasonable observer. *Id.*

### C. Public Place

¶ 14 As an initial matter, Naranjo argues that the trial court erred in concluding that his actions did not occur in a public place. The People do not dispute that Naranjo was in a public place and we agree that he was.

¶ 15 Section 18–9–106(1)(f) does not define the phrase "public place." Thus, the general definition set forth in the criminal code applies. *See* § 18–1–901(1), C.R.S.2014 ("Definitions set forth in any section of this title apply wherever the same term is used in the same sense in another section of this title unless the definition is specifically limited or the context indicates that it is inapplicable.").

¶ 16 A public place is "a place to which the public or a substantial number of the public has access," including but not limited to "highways, transportation facilities, schools, places of amusement, parks, playgrounds, and the common areas of public and private buildings and facilities." § 18–1–901(3)(n), C.R.S.2014.

¶ 17 Nothing in the plain language of the definition of public place excepts any particular type of transportation that an actor uses while in a public place. *Id.* Rather, the phrase is defined in terms of fixed physical locations. *Id.*; *People v. Jackson,* 18 N.Y.3d 738, 944 N.Y.S.2d 715, 967 N.E.2d 1160, 1164 (2012) (interpreting a substantially similar definition of "public place" and concluding that a person is in a public place when located on a highway even if he or she is inside a personal automobile). We thus conclude that the method of transportation a person uses on a highway—whether walking, biking, driving, or some other type of transport—does not alter the fact that the person is on a highway, and therefore in a public place. *See Jackson,* 944 N.Y.S.2d 715, 967 N.E.2d at 1164; *see also Whatley v. State,* 708 N.E.2d 66, 68 (Ind.Ct.App.1999) (concluding that a person driving a semi-trailer truck on the highway while nude was in a public place within the meaning of a public indecency statute); *cf. Texas v. Brown,* 460 U.S. 730, 740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) ("There is no legitimate expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers.").

¶ 18 Thus, because Naranjo was on a highway at the time of the offense, we reject the trial court's conclusion that Naranjo's actions did not occur in a public place.

### D. Naranjo was Entitled to the Requested Instruction

¶ 19 Citing *People v. Garcia,* 826 P.2d 1259, 1263 (Colo.1992), the People argue that the trial court properly denied the requested lesser non-included instruction because it was contradicted by Naranjo's own testimony. In particular, the People assert that Naranjo's defense theory was "diametri-

cally opposed" to a claim that he committed disorderly conduct with a deadly weapon because Naranjo testified that he (1) never threatened the victims with the gun and (2) did not know that the victims had seen the gun until police officers informed him after the fact. We are not persuaded.

■ ¶ 20 Disorderly conduct with a deadly weapon requires neither a threat nor the defendant's knowledge that a particular person was alarmed by the display of the deadly weapon. *See* § 18–9–106(1)(f); *see also Torres*, 848 P.2d at 915 n. 6. Thus, Naranjo's testimony on these topics adds little to our analysis of whether the requested lesser non-included offense instruction was warranted.

¶ 21 Nor do we agree that *Garcia* controls. In that case, the defendant originally claimed that an intruder stabbed and killed the victim. 826 P.2d at 1261. The defendant later gave a videotaped interview in which he said he had not seen an intruder and that the victim was stabbed while trying to take the knife from the defendant. *Id.* at 1262. At trial, the defendant reverted to his original theory of defense that an intruder stabbed the victim, testifying that his videotaped statement was a lie. *Id.* Still, the defendant requested that the jury be instructed on the lesser non-included offense of heat of passion manslaughter based on his videotaped statement. *Id.* The Colorado Supreme Court concluded that such an instruction was inappropriate in light of the defendant's sworn testimony that the videotaped statement was a lie. *Id.* at 1263. Indeed, the court concluded that the defendant "cannot claim that an intruder stabbed [the victim] and at the same time obtain an instruction based on the theory that he stabbed [the victim] in the heat of passion." *Id.* at 1263–64.

¶ 22 Unlike *Garcia*, Naranjo did not seek to offer a lesser non-included defense that was contrary to any prior sworn testimony. *Garcia* is therefore inapposite.

¶ 23 The supreme court later refined *Garcia* in *Brown v. People*, 239 P.3d 764, 769 (Colo.2010). There, the defendant was charged with shooting his girlfriend. While steadfastly maintaining his innocence, the defendant also requested a jury instruction on the lesser included offense of attempted second degree murder. *Id.* at 766. The court held that, absent prior conflicting sworn testimony, a defendant may maintain his innocence at trial and "nevertheless receive an inconsistent jury instruction on a lesser included offense" where there is a rational basis for the instruction. *Id.* at 769; *see also id.* at 768 (noting that *Garcia* "turned not on the inconsistency of the requested [lesser non-included] instruction, but on the inconsistency of the defendant's sworn testimony").

■ ¶ 24 True, *Brown* involved a lesser included offense instruction. But nothing in *Brown* suggests that its holding is limited to lesser included—to the exclusion of lesser non-included—instructions. Indeed, *Brown* extended its holding beyond a lesser included offense to an instruction on the partial defense of voluntary intoxication.[1] *Id.* at 769 (a defendant "who maintains his innocence may receive an inconsistent jury instruction on voluntary intoxication"). In doing so, the court concluded that the legal standard for allowing the partial defense instruction "closely mirrors" the standard for giving a lesser included offense instruction. *Id.* The standard for obtaining a lesser non-included instruction does not just closely mirror the standard for a lesser included instruction. It is, in fact, identical. *Skinner*, 825 P.2d at 1047 (noting that the same legal standard is used to determine when lesser included and lesser non-included offense instructions should be given). We thus see no logical reason to exclude lesser non-included offense instructions from *Brown*'s ambit.

¶ 25 Even so, the People argue that the record does not contain a rational evidentiary basis to support the tendered disorderly conduct with a deadly weapon instruction. Naranjo contends that the record contains such evidence. We agree with Naranjo.

¶ 26 The victims testified that Naranjo pointed the gun at them. Naranjo testified that he reached for the gun and "raised it

---

1. In light of this fact, we are unconvinced by the People's contention at oral argument that *Brown* is limited to lesser included offenses.

up" to put it in the glove box. Thus, that Naranjo handled a gun while driving was not in dispute; his intent in doing so was. Although Naranjo's asserted reason for grabbing the gun was, as the trial court put it, "perfectly benign," a jury could nonetheless conclude that handling a weapon while traveling on a public highway supports a finding that Naranjo consciously disregarded a substantial and unjustifiable risk that the gun would be "displayed" to someone outside the car. And in light of the undisputed evidence that the victims aggressively pursued Naranjo even after seeing the gun, the jury could have rejected the victims' testimony that Naranjo caused them fear by pointing the gun at them. Rather, the jury could have rationally concluded that the evidence supported a finding that Naranjo displayed the gun in a manner that would alarm a reasonable person. Thus, under these circumstances, the record supports a rational basis from which the jury could have convicted Naranjo of disorderly conduct with a deadly weapon and acquitted him of felony menacing. *See Rivera*, 186 Colo. at 29, 525 P.2d at 434 (where the evidence left little doubt that the defendant shot a gun, but there was some doubt as to his intent, the requested lesser non-included instruction was "particularly apropos").

¶ 27 Consequently, we conclude that the trial court erred in declining to give the proposed lesser non-included offense instruction to the jury.

### E. The Error was not Harmless

¶ 28 The People assert that any error was harmless because the jury had the option to convict Naranjo of the lesser non-included offense of harassment, but instead found that every element of menacing had been proven beyond a reasonable doubt. We disagree.

¶ 29 While a trial court need not instruct the jury on every possible non-included offense, the instructions must inform the jury of the defendant's theory of the case. *People v. Trujillo*, 83 P.3d 642, 645 (Colo.2004). In determining whether the trial court adequately informed the jury of a defendant's theory of defense, we consider the instructions as a whole. *People v. Tippett*, 733 P.2d 1183, 1195 (Colo.1987). The failure to give a lesser non-included offense instruction may be harmless if "the defendant's theory could be argued under the other instructions given by the court." *People v. Rubio*, 222 P.3d 355, 362 (Colo.App.2009) (internal quotation marks omitted).

¶ 30 It is undisputed that the jury was instructed on the lesser non-included offense of harassment related to Naranjo's actions not involving the gun. This did little, however, to advance Naranjo's theory of the case. A person commits the crime of harassment if, with the "intent to harass, annoy, or alarm another person," he "[r]epeatedly insults, taunts, challenges, or makes communications in offensively coarse language" in a manner "likely to provoke a violent or disorderly response." § 18–9–111(1)(h), C.R.S.2014. While evidence was presented that Naranjo twice-repeated the statement, "You don't want to fuck with me," his defense theory was not predicated on insulting or taunting the victims. Further, the crime of harassment does not include a deadly weapon element and thus bears little resemblance to the requested disorderly conduct with a deadly weapon instruction or to the charged felony menacing crime. *Cf. Rubio*, 222 P.3d at 362 ("[A] trial court's refusal to give a lesser non-included offense instruction will not justify reversal . . . if the court instructed on comparable lesser non-included offenses."). Thus, that the jury acquitted Naranjo of the lesser offense of harassment does not alleviate the concern that the jury convicted Naranjo of the greater offense because it had no other option. *See People v. Garcia*, 940 P.2d 357, 361 (Colo.1997); *Rivera*, 186 Colo. at 29, 525 P.2d at 434.

¶ 31 Nor does the fact that the jury was instructed on Naranjo's theory of the case mitigate the problem. Even with a theory of the case instruction, the jury was still faced with an all or nothing choice. *See, e.g., Rubio*, 222 P.3d at 362. We cannot know if the jury might have acquitted Naranjo of felony menacing had it been given the option to consider disorderly conduct with a deadly weapon. Naranjo was entitled to have the jury consider that option.

¶ 32 Because there was a rational basis supporting the tendered lesser non-included instruction of disorderly conduct with a deadly weapon, we cannot, under these circumstances, conclude that the failure to so instruct the jury was harmless.

### III.   Conclusion

¶ 33 The judgment of conviction is reversed and the case remanded for a new trial.

Casebolt and Graham, JJ., concur