Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
September 11, 2017

**2017 CO 87**

**No. 15SC596, People v. Naranjo—Criminal Law—Lesser Non-Included Offenses—Jury Instructions.**

The supreme court reviews the court of appeals opinion reversing the defendant's convictions for felony menacing on grounds that the defendant was entitled to a jury instruction on the lesser non-included offense of disorderly conduct with a deadly weapon.  Under the supreme court's case law, a defendant is entitled to a jury instruction on a lesser non-included offense where there exists a rational basis in the evidence to simultaneously acquit the defendant of the greater charged offense and convict the defendant of the lesser offense.  Considering the evidence presented at trial, the supreme court concludes that there was no rational basis for the jury to simultaneously acquit the defendant of felony menacing and convict him of disorderly conduct.  The supreme court therefore reverses the judgment of the court of appeals.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2017 CO 87

**Supreme Court Case No. 15SC596**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 13CA1063

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Gilbert Arturo Naranjo.

**Judgment Reversed**
*en banc*
September 11, 2017

**Attorneys for Petitioner:**
Cynthia H. Coffman, Attorney General
John T. Lee, Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Respondent:**
Douglas K. Wilson, Public Defender
Joseph P. Hough, Deputy Public Defender
  *Denver, Colorado*

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.

¶1     The People charged Gilbert Naranjo with two counts of felony menacing for pointing a handgun from his vehicle toward the two occupants of another vehicle during a road-rage incident. Naranjo admitted at trial that he handled the gun during the incident but testified that he merely moved the weapon from the front passenger seat to the glove compartment to prevent it from sliding onto the floor and accidentally discharging. At the close of evidence, Naranjo tendered a jury instruction for the lesser non-included offense of disorderly conduct, which, in relevant part, prohibits the intentional, knowing, or reckless display of a deadly weapon in a public place "in a manner calculated to alarm." The trial court refused this instruction, and the jury convicted Naranjo of both counts of felony menacing. On appeal, the court of appeals concluded that Naranjo was entitled to the instruction, and it therefore reversed the judgment of conviction and remanded the case for a new trial.

¶2     We granted the People's petition for a writ of certiorari to review the court of appeals' conclusion that Naranjo was entitled to an instruction on the lesser non-included offense of disorderly conduct.[1] Under this court's case law, a defendant is entitled to a jury instruction on a lesser non-included offense where there exists a rational basis in the evidence to simultaneously acquit the defendant of the greater charged offense and convict the defendant of the lesser offense. Montoya v. People,

_____

[1] We granted certiorari review of the following issue:

> Whether the court of appeals erred in reversing the defendant's menacing convictions because he did not receive an instruction on the lesser non-included offense of disorderly conduct.

2017 CO 40, ¶ 32, 394 P.3d 676, 688. Considering the evidence presented at trial in this case—namely, the testimony of Naranjo and the two victims—we conclude that there was no rational basis for the jury to simultaneously acquit Naranjo of felony menacing and convict him of disorderly conduct. Accordingly, we reverse the judgment of the court of appeals.

## I. Facts and Procedural History

¶3 The People charged Gilbert Naranjo with two counts of felony menacing in violation of section 18-3-206, C.R.S. (2017). These charges stemmed from a road-rage incident in 2011 near Pueblo, Colorado, during which Naranjo and another driver, Jose Herrera, got into an altercation while merging onto a highway. Herrera was driving with his sixteen-year-old daughter in a pickup truck, and Naranjo was driving a smaller car. The prosecution alleged that as the two vehicles were traveling down the highway, Naranjo pointed a handgun from his open window up at Herrera and his daughter and told the two, "You don't want to fuck with me."

¶4 At trial, Herrera, his daughter, and Naranjo testified about the incident. All three acknowledged that there had been an altercation on the highway, but the victims' account differed from Naranjo's.

¶5 Herrera testified that he was accelerating through a green light onto a highway on-ramp when Naranjo passed him and cut him off. Herrera braked to slow down and threw his hands in the air. As the two vehicles entered the highway and continued down the highway, Herrera tried to pass Naranjo, but Naranjo repeatedly sped up, cut in front of Herrera, and slowed down to force Herrera to brake. After continuing down

3

the highway some distance, the two vehicles eventually slowed to below highway speed and Herrera pulled even with Naranjo's car, with the passenger side of Herrera's truck next to the driver side of Naranjo's car. Herrera rolled down the passenger-side window of his truck, Naranjo rolled down his driver-side window, and Herrera heard Naranjo say, "You don't want to fuck with me." At the same time, Naranjo raised a black handgun with his right hand to about chest-height and pointed it at Herrera's daughter in the passenger seat.

¶6 When Naranjo exited the highway, Herrera followed him and called 911 to report the incident and Naranjo's location. Herrera continued to follow Naranjo until police arrived and stopped Naranjo.

¶7 Herrera's daughter similarly testified that Naranjo cut in front of the truck as they were entering the highway on-ramp, and that Herrera threw his hands into the air. On the highway, Naranjo cut in front of the truck and slowed down to prevent Herrera from passing in either the left or right lane. Herrera's truck ultimately pulled into the left lane, alongside Naranjo's car. Herrera rolled down the truck's window, and the daughter observed Naranjo raise a handgun to his open driver-side window, look up at their truck, and say, "You don't want to fuck with me." Herrera then braked hard, called 911, and continued to follow Naranjo until police arrived.

¶8 In contrast, Naranjo testified that shortly before he encountered Herrera's truck, he heard a clanking sound coming from under the passenger seat of his car. He realized that the clanking sound was his handgun sliding on the floorboard as he made a turn. He had mistakenly left the gun in his car after going shooting at a reservoir with

4

his wife and a friend the day before. Naranjo had not unloaded the gun and was worried about it accidentally discharging, so he picked it up and put it on the passenger seat.

¶9 Naranjo testified that he passed Herrera while accelerating onto the highway on-ramp, but he did not think that he had cut Herrera off. According to Naranjo, Herrera then began to tailgate him as he accelerated to the highway speed limit and continued down the highway. Naranjo testified that he pressed the brakes to slow down, hoping that Herrera would pass him. However, as he did so, the gun slid forward on the passenger seat. To keep the gun from falling onto the floor and accidentally discharging, Naranjo reached over, picked up the gun, and put it in the glove compartment. Naranjo expressly denied brandishing the gun, pointing it at anyone, or making any threats; he instead testified that the gun was pointed away from him on the seat and that he moved it to the glove compartment in that same position.

¶10 Naranjo further testified that as he put the gun in the glove box, Herrera pulled alongside him and appeared to be trying to tell him something. Naranjo rolled down his window and heard Herrera telling him to pull over. Naranjo did not want to pull over on the highway, so he rolled his window up and exited the highway. Naranjo testified he was shaken by the incident and felt threatened, so he decided to drive to his brother-in-law's tattoo shop to relax and "kind of vent" about what had happened. While he was driving to the shop, Naranjo noticed that Herrera was following him, and two police cars stopped Naranjo shortly thereafter.

¶11   At trial, the jury was instructed on the charged offense of felony menacing under section 18-3-206(1)(a).  The menacing instruction provided that the jury should convict Naranjo of felony menacing if it concluded:

1. That [Naranjo,]
2. in the State of Colorado, at or about the date and place charged,
3. by any threat or physical action,
4. knowingly placed or attempted to place another person in fear of imminent serious bodily injury[,]
5. by the use of a deadly weapon or any article used or fashioned in a manner to cause a person to reasonably believe that the article was a deadly weapon.

Naranjo also tendered an instruction on the lesser non-included offense of disorderly conduct with a deadly weapon under section 18-9-106(1)(f), C.R.S. (2017).  The proposed instruction directed the jury to convict Naranjo of disorderly conduct if it concluded:

1. That [Naranjo,]
2. in the State of Colorado, at or about the date and place charged,
3. Intentionally, knowingly, or recklessly
    a. not being a peace officer
    b. displayed a deadly weapon
    c. or represented verbally or otherwise that he or she was armed with a deadly weapon
    d. in a public place
    e. in a manner calculated to alarm[.]

Although the tendered instruction referred to intentional, knowing, or reckless conduct, defense counsel argued that Naranjo was entitled to the instruction because he acted recklessly in handling a weapon while driving down the highway.  Specifically, in handling the weapon, he potentially exposed it to the view of passing motorists, and thus consciously disregarded a risk that other passing motorists would be alarmed.  The prosecution responded that the instruction was unwarranted because there was no

6

rational basis for acquitting Naranjo of felony menacing while simultaneously convicting him of disorderly conduct given that Naranjo's testimony suggested, at most, only negligent conduct. The trial court ultimately refused the instruction. It reasoned that even accepting Naranjo's testimony as true, there was no basis to convict Naranjo of disorderly conduct because his testimony that he simply reached over and moved the gun from the front passenger seat into the glove compartment described neither reckless conduct nor the display of a weapon in a public place.

¶12 Naranjo then tendered an instruction for the lesser non-included offense of harassment under section 18-9-111(h), C.R.S. (2017), which the trial court accepted. The jury found Naranjo guilty on both counts of felony menacing but acquitted him of harassment.

¶13 On appeal, the court of appeals reversed Naranjo's felony menacing convictions and remanded for a new trial, concluding that Naranjo was entitled to the jury instruction on the lesser non-included offense of disorderly conduct. People v. Naranjo, 2015 COA 56, ___ P.3d ___. The court of appeals disagreed with the trial court's conclusion that Naranjo's testimony did not describe the display of a weapon in a "public place," reasoning that the Criminal Code definition of this term includes "highways." Id. at ¶¶ 14–18 (citing § 18-1-901(3)(n), C.R.S. (2017)). The court further concluded that Naranjo's admission that he handled a gun while driving on a public highway established a rational evidentiary basis for the instruction because a jury could conclude that in doing so, Naranjo consciously disregarded a substantial and unjustifiable risk that the gun would be "displayed" to someone outside the car in a

7

manner that would alarm a reasonable person. Id. at ¶ 26. Finally, the court of appeals concluded that the error was not harmless. Id. at ¶¶ 28–32. The court observed that the lesser non-included offense of harassment (which has no deadly weapon element) bore little resemblance to the requested instruction on disorderly conduct with a deadly weapon or to the charged offense of felony menacing. Id. at ¶ 30. Thus, the court reasoned, the jury's acquittal on the lesser offense of harassment did not alleviate the concern that the jury convicted Naranjo of the greater charged offense because it had no other option. Id. Accordingly, the court of appeals reversed Naranjo's judgment of conviction and remanded the case for a new trial. Id. at ¶ 33.

¶14 We granted the People's petition for a writ of certiorari to review the court of appeals' ruling.

## II. Analysis

### A. Lesser Non-Included Offenses

¶15 In Colorado, a criminal defendant is entitled to have the jury presented with the option to convict him of a lesser non-included offense, so long as a rational evidentiary basis exists to simultaneously acquit him of the charged offense and convict him of the lesser offense. Montoya v. People, 2017 CO 40, ¶ 32, 394 P.3d 676, 688; People v. Aragon, 653 P.2d 715, 720 n.5 (Colo. 1982). Unlike lesser included offenses, which are now governed by statute, see § 18-1-408(5)–(6), C.R.S. (2017), Colorado's approach to lesser non-included offenses remains entirely judicially created, People v. Rubio, 222 P.3d 355, 360 (Colo. App. 2009). Although we have continued to permit a defendant to request an instruction on a lesser non-included offense, we have acknowledged that the

8

practice is not required by the federal constitution, and in fact has been criticized by the U.S. Supreme Court. Montoya, ¶ 32, 394 P.3d at 688 (citing Hopkins v. Reeves, 524 U.S. 88, 99 (1998)); see also Reyna-Abarca v. People, 2017 CO 15, ¶ 93, 390 P.3d 816, 830 (Coats, J., dissenting) (observing that Colorado's practice of permitting a defendant to request an instruction on a lesser non-included offense "clearly represents a minority position").

¶16     Colorado's approach to lesser non-included instructions originated in People v. Rivera, 525 P.2d 431 (Colo. 1974). There, we held that the "statutory test" for determining whether a lesser offense is necessarily included in the charged offense did not bar a defendant from requesting an instruction on a lesser non-included offense where such an instruction is supported by the evidence. Id. at 434. In reaching this conclusion, we reasoned that a defendant is entitled to an instruction on the defense theory of the case as revealed by the evidence, and thus, a theory-of-the-case instruction that permits the jury to find a defendant innocent of the charged offense and guilty of a lesser charge should be given when warranted by the evidence. Id. We posited that such an approach promotes better trials and fairer verdicts, and helps ensure that a jury does not convict a defendant of a greater offense than the one actually committed merely because the greater offense is the only crime charged and the jury is persuaded

9

that some crime was committed.  See id.; see also Montoya, ¶ 32, 394 P.3d at 688; People v. Trujillo, 83 P.3d 642, 645 (Colo. 2004).[2]

¶17     Although we have never formally defined what constitutes a lesser non-included offense, logically it is a lesser offense that requires proof of at least one element not contained in the charged offense.  Accordingly, we have held that a defendant's request for an instruction on a lesser non-included offense is tantamount to adding a charge against the defendant with his consent.  Rivera, 525 P.2d at 434; accord People v. Rock, 2017 CO 84, ¶ 8, ___ P.3d ___; Montoya, ¶ 32, 394 P.3d at 688.  Further, if a jury convicts the defendant of both the charged offense and the lesser non-included offense, double jeopardy principles may not prohibit the defendant from being punished for both offenses.  See Montoya, ¶ 42, 394 P.3d at 691; see also Arko v. People, 183 P.3d 555, 562 (Colo. 2008) (Coats, J., dissenting) (noting that a jury's consideration of a lesser non-included offense can subject the defendant to an additional conviction and ultimately harsher punishment).  For these reasons, we have stated that the submission of an instruction on a lesser non-included offense "could be permissible only as a tactical and strategic choice made by defense counsel."  Montoya, ¶ 32, 394 P.3d at 688.

---

[2] In their merits briefing to this court, the People argued for the first time that we should overrule our decision in Rivera to the extent that it allows a defendant to request an instruction on a lesser non-included offense over the prosecution's objection.  The People did not raise this issue in their petition seeking certiorari review of the court of appeals' decision in this case.  Because we need not address issues not raised in the petition for certiorari review, and because we can resolve this case on the narrower question actually presented in the People's petition, we decline to revisit Rivera here.

¶18     Although an ordinary theory-of-the-case instruction must be given if the record contains "any evidence" to support the theory, see People v. Nunez, 841 P.2d 261, 264 (Colo. 1992), we have made clear that a defendant seeking an instruction on a lesser non-included offense faces a higher burden: just as with lesser included offenses, the jury should be instructed on a lesser non-included offense only where there exists a rational evidentiary basis for the jury to simultaneously acquit the defendant of the greater charged offense and convict the defendant of the lesser offense. Brown v. People, 239 P.3d 764, 769 (Colo. 2010) (lesser included offense); Montoya, ¶ 32, 394 P.3d at 688 (citing Rivera, 525 P.2d at 434) (lesser non-included offense); see also § 18-1-408(6) ("The court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."). Thus, before a lesser non-included offense may be submitted to the jury under a theory-of-the-case instruction, "there must be some evidence in the record to rationally support a conviction on the lesser offense." Aragon, 653 P.2d at 720 n.5. Where such evidence is lacking, it is not error to refuse to give the requested instruction. Cf. Nunez, 841 P.2d at 265 & n.8 (noting that it is not error to reject a proposed theory-of-the-case instruction that is not grounded in the evidence).

¶19     In addition, we have held that a defendant is not entitled to an instruction on a lesser non-included offense that contradicts the defendant's sworn testimony at trial. See People v. Garcia, 826 P.2d 1259, 1262–64 (Colo. 1992). In Garcia, the defendant was charged with second degree murder for the stabbing death of his girlfriend. His theory

11

of defense at trial was that an intruder stabbed the victim. Id. at 1262. He nevertheless requested a jury instruction on heat-of-passion manslaughter, which is not a lesser included offense of second degree murder. Id. We held that the defendant could not claim that an intruder stabbed the victim and at the same time obtain an instruction based on the theory that the defendant stabbed the victim in the heat of passion. Id. at 1263–64. We reasoned that the only evidence supporting a heat-of-passion instruction was a videotaped statement that the defendant had made to the police; however, the defendant testified at trial that the statement had been a lie, which constituted a binding judicial admission. Id. at 1262–63. We further observed that "[m]anslaughter was not even Garcia's theory of defense." Id. at 1263. In short, although there was some evidence in the record supporting a heat-of-passion instruction, that evidence was contradicted by the defendant's sworn testimony at trial; moreover, the requested instruction on the lesser non-included offense was inconsistent with the defendant's theory of defense.[3]

## B. Application

¶20     We hold that the trial court did not err in refusing to instruct the jury on the lesser non-included offense of disorderly conduct because we conclude that there was

---

[3] Contrary to the court of appeals opinion in this case, our subsequent decision in Brown v. People, 239 P.3d 764 (Colo. 2010), did not refine our holding in Garcia. See Naranjo, ¶¶ 23–24. Rather, Brown concerned an instruction on a lesser included offense governed by section 18-1-408(6); in that opinion, we expressly distinguished Garcia as concerning "an inconsistent jury instruction on a lesser non-included offense" and characterized our rejection of such an instruction in Garcia as "an appropriate judicial remedy." Brown, 239 P.3d at 768.

no rational basis in the evidence to acquit Naranjo of the felony menacing charges while simultaneously convicting him of disorderly conduct.

¶21    An individual commits felony menacing if he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury by the use of a deadly weapon.  § 18-3-206.  Knowingly pointing a gun at another individual at close range in the threatening manner described by the victims in this case constitutes felony menacing.  See People v. Hines, 780 P.2d 556, 559 (Colo. 1989) ("The term 'use' in section 18-3-206 is broad enough to include the act of holding the weapon in the presence of another in a manner that causes the other person to fear for his safety.") (collecting cases).  Thus, to rationally acquit Naranjo of the felony menacing charges, the jury would have had to discredit the victims' testimony that Naranjo pointed the gun at them at close range and told them, "You don't want to fuck with me."

¶22    However, even assuming the jury discredited this aspect of the victims' testimony—which it was entitled to do—the jury rationally could not have simultaneously convicted Naranjo of the lesser offense of disorderly conduct with a deadly weapon based on the remaining trial evidence regarding the altercation, which consisted principally of Naranjo's testimony.

¶23    An individual commits disorderly conduct with a deadly weapon if he or she is not a peace officer and intentionally, knowingly, or recklessly displays a deadly weapon in a public place "in a manner calculated to alarm."  § 18-9-106(1)(f).  It is not required that the individual be aware that others will be alarmed, or that others are actually alarmed.  Rather, an individual may be criminally liable under this statute "if the act of

13

displaying the deadly weapon would alarm a reasonable person observing the conduct." People v. Torres, 848 P.2d 911, 915 n.5 (Colo. 1993); cf. People v. Opana, 2017 CO 56, ¶¶ 13–16, 395 P.3d 757, 760–62 (construing the statutory phrase "force . . . intended . . . to produce death" to refer to conduct that normally or typically would be intended to produce death, regardless of the actor's subjective intent).

¶24     The People contend that Naranjo was not entitled to an instruction on disorderly conduct because there was no rational basis in the evidence to conclude that Naranjo acted recklessly, as the defense argued in support of the instruction. In other words, the People contend, there was no evidence that, in moving the gun to the glove compartment to prevent it from discharging, Naranjo consciously disregarded a substantial and unjustifiable risk that someone would observe the gun and be alarmed. We instead conclude that, even assuming there was a rational basis to acquit Naranjo of felony menacing, Naranjo was not entitled to the instruction because there was no rational basis in the remaining evidence to conclude that Naranjo displayed a deadly weapon "in a manner calculated to alarm."

¶25     During his testimony at trial, Naranjo described his act of moving the gun from the passenger seat to the glove box several times. Each time, Naranjo testified that he merely picked up the gun from the passenger seat and placed it into the glove box:

- "Um, as I pressed on the brake, I reacted to my gun starting to slide off of the seat, and it slid a little and just off reaction, I reached over to pick it up . . . and to put it into my glove box."

- "I casually reached to my passenger seat, um, opened the glove box, put the gun in."

14

- "[The gun] was never pointed in any direction, um, the general direction up as I was lifting it up to put it in the glove box."

- "[The gun] was like basically, the way I had it sitting on the seat, I guess it was pointed away from me and I picked it up, and I put it in the glove box in that same position."

¶26 Naranjo emphatically denied that he ever brandished the gun or pointed it at anyone. Moreover, it was undisputed that the victims were in the left lane and Naranjo was in the right lane of the highway when the victims saw the gun. Thus, given Naranjo's testimony, his body would have been between the gun and the victims, and there was no evidence of other vehicles in the vicinity whose occupants could observe the gun.

¶27 The actions that Naranjo described in his testimony do not constitute disorderly conduct under Colorado law because these actions would not "alarm a reasonable person observing the conduct." See Torres, 848 P.2d at 915 n.5. For example, it is not unlawful in Colorado to possess a firearm in a private automobile for hunting or for the lawful protection of a person or property while traveling. §§ 18-12-105(2)(b), -105.5(3)(c), -105.6, C.R.S. (2017). Were we to characterize as disorderly conduct Naranjo's account of the events—under which "[t]here was never any pointing, never any brandishing, never any type of threat whatsoever with the gun"—then the disorderly conduct statute would criminalize essentially every instance in which an individual merely handles a gun publicly in another's presence. Because the disorderly conduct statute does not reach so broadly, and instead requires that an individual's actions be conducted "in a manner calculated to alarm," see

15

§ 18-9-106(1)(f), we conclude that Naranjo's own testimony did not provide a rational basis to convict him of disorderly conduct.

¶28 The court of appeals concluded that there was a rational basis to convict Naranjo of disorderly conduct based on testimony that Naranjo "raised the gun up in the air." Naranjo, ¶¶ 3, 26. However, Naranjo did not testify at trial that he "raised the gun up in the air" during the highway altercation; instead, Naranjo and one of the arresting officers acknowledged that Naranjo had made this statement at the time of his arrest. But neither Naranjo nor the victims testified at trial that Naranjo raised the gun up into the air. Further, Naranjo expressly denied brandishing or pointing the weapon during his trial testimony, and he testified that he lifted the gun only to place it in the glove box, thereby directly contradicting his prior statement. Naranjo's theory-of-defense instruction similarly asserted that "at no point did [Naranjo] knowingly point, wave, or threaten [the victims] with the pistol." Under these circumstances, Naranjo's prior statement did not provide a rational basis for the jury to convict him of disorderly conduct. Cf. Garcia, 826 P.2d at 1263 (holding that a defendant "cannot rely on a statement that he has, under oath, declared to be false in order to obtain a [lesser non-included] instruction").

¶29 Thus, the only evidence that could have provided a rational basis for the jury to convict Naranjo of either disorderly conduct or felony menacing was the victims' testimony that Naranjo pointed the gun at them during a highway altercation. But, if the jury credited that testimony, then the jury could not have rationally acquitted Naranjo of felony menacing because the conduct described in the victims' testimony

16

rose to the level of felony menacing, see Hines, 780 P.2d at 559, not mere disorderly conduct. Accordingly, the trial court correctly concluded that the jury instruction on disorderly conduct was unwarranted in light of the evidence presented at trial.

### III. Conclusion

¶30 Considering the evidence presented at trial, we conclude that there was no rational basis for the jury to simultaneously acquit Naranjo of felony menacing and convict Naranjo of disorderly conduct. The trial court therefore did not err in refusing to instruct the jury on the lesser non-included offense of disorderly conduct with a deadly weapon. Accordingly, we reverse the judgment of the court of appeals.